## Carnes v. Commonwealth.

(Decided January 24, 1912.)

### Appeal from Bell Circuit Court.

1. Homicide—Part of Res Gestae.—What the defendant said at the time of the homicide is part of the res gestae and may be admitted to show the state of his feelings, although said after the shooting.

2. Question—Objection—Exception.—Where the defendant objects to a question, and the court does not rule on the objection, it should be considered as overruled but to be available on appeal, an exception must be taken to the admission of the testimony.

3.  Statement of Court—Presence of Jury.—Statements of the court
    in the presence of the jury or some questions asked by him will
    not be ground for reversal unless substantially prejudicial to
    the defendant.
4.  Instructions.—Instructions on self defense approved.

BLACK, GOLDEN & OWENS, E. F. BAKER and O. V. RILEY for
appellant.

JAS. GARNETT, Attorney General, M. M. LOGAN, Assistant At-
torney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Af-
firming.

Ben Carnes and Alex Mathena were indicted in the
Bell Circuit Court for the murder of George Montgom-
ery. They demanded a separate trial. Carnes being
tried first, was found guilty of murder, and his punish-
ment fixed at confinement in the penitentiary for life. He
appeals.

Montgomery was a miner. He and his wife were go-
ing along the road on the way to his work when they met
Carnes and Mathena, and he was killed. His wife thus
tells what occurred: "Mr. Carnes spoke to him and he
said, "George, you have been talking about me," and
Mr. Carnes said he told a story about him, and stuck his
hands in his pocket, and backed up on the tramroad, and
pulled down and shot him." On the other hand Carnes
and Mathena testified that when they met, Montgomery
said that Carnes had been lying on him and his wife, and
put his hand in his pocket, that Carnes stepped back
and Montgomery reached for some rocks; he threw two
of them, one of them striking Carnes, knocking him to
his knees, and he then drew his pistol and shot Mont-
gomery as he was reaching for more rocks. On this evi-
dence the court gave the jury these instructions:

"1.  If you shall believe from the evidence beyond a
reasonable doubt, that the defendant, Ben Carnes, in this
county and before the finding of the indictment herein,
wilfully, feloniously and of his malice aforethought, and
not in his necessary or reasonably  apparent necessary
self defense, so shot at and wounded George Montgom-
ery, as that he then and there died thereby, then he is
guilty of wilful murder as charged in the indictment and
you ought to so find and fix his punishment at death. or

at confinement in the State Penitentiary for life, in your discretion.

"2. Or, if you shall not believe from the evidence beyond a reasonable doubt, that the defendant has been proven guilty as defined in Instruction No. 1, above, but shall believe from the evidence beyond a reasonable doubt that the defendant, Ben Carnes, in this county and before the finding of the indictment herein, wilfully, feloniously and in sudden heat and passion or in sudden affray, and without previous malice, and not in his necessary or reasonably apparent necessary self defense, so shot at and wounded George Montgomery as that he then and there died thereby, then the defendant is guilty of voluntary manslaughter included in the indictment herein and you ought to so find.

"3. If you shall believe from the evidence beyond a reasonable doubt, that the defendant has been proven guilty either of wilful murder as defined by Instruction No. 1 above, or of voluntary manslaughter as defined by Instruction No. 2 above, but shall have a reasonable doubt from all the evidence as to whether the defendant be guilty of wilful murder or of voluntary manslaughter, then you ought to find him guilty of the lower offense, voluntary manslaughter.

"4. The words 'wilful' and 'wilfully' as used in these instructions mean intentional, not accidental or involuntary.

"The words 'feloniously' as used in these instructions means preceding from an evil heart or purpose, done with the deliberate intention of committing a crime.

"The phrase 'malice aforethought, as used in these instructions means a pre-determination to commit the act of killing without legal excuse; and it is immaterial at what time before the killing such a determination was formed.

"5. If you shall believe from the evidence that at the time the defendant, Ben Carnes, shot at and wounded George Montgomery, so as that he died thereby, if he did so do, he believed and had reasonable grounds to believe that he was then and there in danger of death or the infliction of some great bodily harm at the hands of said Montgomery and that it was necessary or was believed by the defendant in the exercise of a reasonable judgment to be necessary to so shoot and wound the deceased in order to avert that danger, real or to the defendant

apparent, then you ought to acquit the defendant upon the ground of self defense or apparent necessity therefor.

"6. The law presumes the defendant innocent until his guilt has been proven beyond a reasonable doubt, and if upon the whole case you have a reasonable doubt from all the evidence of the defendant having been proven guilty by the evidence then you ought to find him not guilty."

The instructions aptly submitted to the jury the law of the case. The jury could not convict Carnes under the instruction for murder unless they believed from the evidence that he did the shooting not in sudden heat and passion but with malice aforethought, and that in shooting Montgomery, he did not act in his necessary self defense, real or to him apparent.

When Mrs. Montgomery was on the stand she was asked how far she was from her husband when he was shot. She said she was standing right at him. She was then asked: "How close were you to him?" and answered, "Right at him." She was then asked to indicate in some way how close she was and making no answer, the court said: "Were you as close as this man?" pointing to a man who was about two feet away from him, and she said, "Yes, sir." We do not see that the defendant could have been prejudiced by this. The court evidently intended simply to shorten the interrogation, and that she was right with her husband is clear from all the evidence. When Ben Carnes was on the stand he was asked by his counsel as to a previous difficulty between him and Montgomery. The court ruled that he could prove the fact that there had been a previous difficulty but not the details of it. The counsel then went on to ask some questions which called for Carnes' opinion about the matter, and the court sustained an objection to the questions and finally said, "If you can have it all, you can have it all on both sides." We do not see how this remark of the court could have prejudiced the defendant; we have often ruled that the details of a prior difficulty are not competent evidence in a case of this sort, but that only the general fact may be shown. The court properly sustained the objection to the questions which were asked, and what he said was only given as a reason for his ruling which was that if one side was permitted to go into the details of the matter, the other would be

allowed to do so also.   In the cross examination of Carnes, the defendant objected to certain questions that were asked him.   The court in some instances sustained the objections, and in others he appears to have made no ruling.   Where an objection is made to a question and the court does not rule on it, we think it should be treated as overruled, but for the objection to be made available on appeal, an exception should be taken to the admission of the testimony.   Reading the bill of exceptions in this way we do not see that the defendant was substantially prejudiced by the rulings of the court.   What often happens on the trial is that a question is objected to, but is answered by the witness before the court can rule, and as the witness has answered, the court deems a ruling unnecessary.   This may have been the reason there was no ruling on these questions; but, however this may be, we do not see anything substantially improper in the examination.   The Commonwealth had a right to show by the defendant himself that after her husband was shot Mrs. Montgomery went to him and called both Carnes and Mathena to help her, and they both refused to help her in any way.   This was a part of the *res gestae.*   It served in some measure to show the feeling of the parties and was properly admitted.   Complaint is made that after the motion for new trial was made, the court allowed additional affidavits filed on behalf of the Commonwealth controverting the affidavits which had been filed by the defendant, but there is nothing in the record from which we can say that the court abused a sound discretion in the matter.   Appellant appears to have been represented by counsel throughout the proceeding and when the motion for new trial was overruled after these affidavits had been filed, he filed his bill of exceptions and had the judgment suspended.   The record shows no objection to the filing of the additional affidavits.   The newly discovered evidence on account of which the new trial was asked was cumulative; and if it all had been introduced before the jury, it is very doubtful if it would have had any decisive effect on the result.   If new trials were granted for such reasons, judicial proceedings would be interminable; for it is nearly always practicable to find new cumulative evidence after the trial of a case.   On the whole record we do not find any error to the prejudice of the substantial rights of the appellant.

Judgment affirmed.