## Bates v. Commonwealth.

(Decided November 30, 1920.)

### Appeal from Letcher Circuit Court.

1. Criminal Law—Circumstantial Evidence.—In an action wherein circumstantial evidence, alone, is relied upon, a wider range in examination of witnesses is permissible than when eye witnesses are produced.

2. Criminal Law—Circumstantial Evidence.—The wide range permissible in the examination, in cases where circumstantial evidence is, alone, relied upon, does not mean, that the proof of anything irrelevant to the issue, or evidence, that is not competent for any reason, is admissible, but, every relevant fact and circumstance, which has a tendency to connect the accused

with the crime, with the guilt of which he is charged, is admissible.

3.   Criminal Law—Appeal and Error.—Errors appearing upon the record, which do not prejudice the substantial rights of the litigant, upon appeal are disregarded.

4.   Criminal Law—Motive for Commission of Crime.—In a criminal trial, any relevant fact which tends to prove the existence of a motive on the part of the accused for the commission of the crime charged, is admissible.

5.   Criminal Law—Decisions Upon Challenges to Panel.—By section 281, of the Criminal Code, decisions of the trial court upon challenges for cause and to the panel, in the empaneling of jurors, are not appealable nor the subjects of review upon appeal.

6.   Criminal Law—Sheriff of County.—The sheriff to which reference is made in section 193, Criminal Code, is the sheriff of the county, wherein the court is sitting.

7.   Criminal Law—Sheriff Relative of Deceased.—The fact that a sheriff is a relative of the deceased, is sufficient cause for the designation of another person, to summon the jury, in a trial of one indicted for a homicide.

W. H. MAY and D. D. FIELDS & DAY for appellant.

CHARLES I. DAWSON, Attorney General, T. B. McGREGOR, Assistant Attorney General, and R. MONROE FIELDS, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, Uriah Bates, a young man about twenty-four years of age, resided with his father's family, near the point, where Indian creek, empties into Rockhouse creek. On Indian creek three or four miles from its mouth, Elijah Sergent resided with his wife, his daughter, Edith, a sixteen year old girl, and probably other children. Sergent was between fifty and sixty years of age. Beside the public highway, which ran along Indian creek, and a short distance from the mouth of the creek, lived Horse Neece and his wife, in a house, which was owned by Robert Bates, the father of the appellant. Immediately near, the mouth of Indian creek and not far from the road, was an old, vacant house, which was, also, the property of Robert Bates. On a Friday afternoon, Sergent left his home, taking with him a jug, and saying to his family, that he was going to see appellant to procure a sum of money, which the latter owed him, and was intending to procure whiskey, in the jug, for medicine and the use of his friends. During that afternoon, he passed the dwelling of Horse Neece,

and there inquired of the wife of Neece, for the appellant, and when he learned that appellant was supposed to be at his home, went on in that direction. At this time, he was carrying the jug. When he returned later, in the afternoon, and going in the direction of his home, he did not have the jug. His desire to see appellant, however, had been rewarded, as it appears, from the testimony of appellant and others, that he saw and had a conversation with him, and the absence of the jug, upon his return home, was attributable, to the fact that he took or sent the jug, to the house of Martin Bates, for the purpose of its being filled with oil. Martin Bates lived upon Rockhouse creek, a short distance above the mouth of Indian creek. From the testimony of appellant, it is developed, that the purpose for which Sergent desired to see him, was, that certain rumors had come to the ears of Sergent, of an improper intimacy, between appellant and the wife of Sergent, and also, that such an intimacy existed between the wife of Sergent, and one Martin, and, also, between her and one Taylor, and that, being assured, by appellant, that the report which connected him with Mrs. Sergent was untrue, Sergent requested him to come to his home on the following Sunday, and go with him to Mill Stone, and there make an affidavit, exculpating his wife from the accusation, and appellant promised to comply with the request. On the afternoon of the following Sunday, Sergent appeared, at the home of Horse Neece, who assisted by his father, was engaged in butchering a hog, and, again, expressed a desire to see appellant. Horse Neece, desiring to go to the place of business of one Elam Sexton, who lived upon the road, on Rockhouse creek, below the home of appellant, to procure eggs, Sergent accompanied him to the mouth of Indian creek, and there turned up Rockhouse, in the direction of Martin Bates, but, requested Neece, in passing the home of appellant to ascertain if he was there, and to tell him that he wanted to see him. Sergent went on to the home of Martin Bates, and there procured one Sexton, who was there, to make inquiry over the telephone, at the home of appellant and to ascertain whether he was there, but, received information, that he was not at home. Neece returning from Elam Sexton's, went on up the creek to the home of Martin Bates to procure meal for supper, and in passing the vacant house, near the junction of Indian with Rockhouse creek, saw ap-

pellant proceeding from the old house toward the road, and there gave him information, that Sergent was desiring to see him, when appellant inquired, what Sergent wanted to see him about, and when Neece disclaimed any knowledge upon that subject, asked him several times, if he was sure that he did not know about what Sergent was desirous of meeting with him.  Appellant, also, requested Neece, that, when he returned from Martin Bates, if Sergent should return with him, that he would be fifteen or twenty steps, in front of Sergent, or that far in his rear, as he wanted to talk with Sergent.  When Neece arrived at Martin Bates' place, he informed Sergent, of the whereabouts of appellant, and Sergent accompanied Neece on his return toward his home from there, and near the vacant house, appellant was standing against the fence, near the road, as if waiting for them. Sergent remarked to Neece, that he could pass on, which he did, and left Sergent and appellant, together, whom he heard address each other in a friendly way, upon Sergent approaching appellant.  After a short conversation between Sergent and appellant, the former came on and accompanied Neece to the home of Neece, and then passed on in the direction of his own home.  Before separating from Neece, he told him, that appellant had said to him, to tell Neece, that he could not assist him in taking in his hog, as he was obliged to go to feed his stock.  Neece deposed, that he had requested appellant to assist him in putting away the hog, which he had killed.  When Neece and Sergent separated, the latter going in the direction of his home, the former, within a few minutes, went to stable the mule he was riding, and a witness, who was about that time, approaching the house of Neece, upon the road, from the direction opposite to that which Sergent was traveling, deposed, that she did not meet nor see Sergent upon the road, but saw Neece, putting away the mule, when she arrived at his place.  Sergent, although when last seen by any witness was going up the road, in the direction of his home, did not return to his home upon that night, and was not seen any more alive.  On the next afternoon, Mrs. Sergent approached the Neece house, searching for her husband, and was accompanied from there by Mrs. Neece, and on a road, which passes down Beaver Dam creek, met with appellant, who was carrying a shot gun. Mrs. Sergent inquired of him if he knew anything of her husband, and inquired to know, what her husband

wanted to see him about on the day preceding. Appellant, after inquiring, if he did not return home on the preceding evening, declined to discuss, what the object of Sergent's desire to see him, on the preceding day, was, in the presence of Mrs. Neece. Mrs. Sergent then dismounted from the horse and she and appellant stepped a short distance away, and had a conversation, out of the hearing of Mrs. Neece, of about twenty minutes, in length, and in that conversation, appellant who is the only one who testifies about the substance of the conversation, deposes that he informed her of the occasion of Sergent's visit to him. The appellant deposes, that on the evening preceding, Sergent inquired why he had not come to his home, as he had promised, and made the affidavit, and when he excused himself, by stating, that certain parties had come from Knott county, to see him, and prevented him from keeping his promise, Sergent replied, that it was unnecessary anyway, as he had investigated the reports of the intimacy of his wife with Martin and Taylor, and found them to be true, and that he now would not believe her nor appellant either. On Monday afternoon, before meeting with Mrs. Sergent and Mrs. Neece, the appellant had visited the home of one Bently, his uncle by marriage, and who resided on Beaver Dam creek, and in the absence of the uncle, procured an old shot gun, leaving with his aunt a ten dollar bill, with the statement to tell her husband, that, if he did not return the gun, or one equally as good, he could keep the money, and at the same time saying that he had contracted the gun or was negotiating a sale of it to one John Profit. On a day during the following week, he met with his uncle and told him, that a man had the gun, who was trying to capture a deserter from the army, and to not speak of his having the gun. During the same week a witness deposed that, at the house of Elam Sexton, appellant said to a witness, to tell Mrs. Sergent not to grieve, but, that her husband would never return. The same witness deposed, that on Monday following the disappearance of Sergent, in discussing the fact of the disappearance of Sergent, appellant said that he did not know anything of him, but, propounded to one present a question, to the effect, that if he was courting another man's wife, would he be telling about it? These statements were stoutly denied by appellant. The continued absence of Sergent, after a few days, caused his neighbors to make a diligent search

for his body, and eight or nine days after his disappearance his dead body, was found, in the woods, on the side of a mountain, which is situated between Indian creek, and Rockhouse, about five hundred yards from the public road, which extends up Indian creek, and at the head of a hollow, which debouches upon the road, between the dwelling occupied by Horse Neece, and the old vacant house, near the mouth of Indian creek. Near the body were ashes and the partially burned pieces of wood, of a fire, and around about it, the leaves and ground showed the effects of having been walked upon. The appearances indicated, that he had been sitting upon a thin rock, against a tree and had fallen upon his right side, when death overtook him. A hole, two inches, in diameter entered the right side of the back of his head, and his right eye was pushed forward out of its socket. A smart quantity of blood had flowed from the wound upon the ground and in it were found several shot. Within a foot or two of the back of the body, there lay a shot gun, from which a portion of the end of the barrel, and a portion of the breech had recently been cut or sawed off. A track, as if some one walking approached the body from in the direction of the road, and the same track could be traced from the body in the direction of the road, for a considerable distance, as if one departing from it. This gun was thoroughly identified as the one, which appellant had procured at the house of Bently, on the Monday afternoon following the disappearance of Sergent. The portions had been cut off from it, since appellant procured it, at Bently's, probably with the purpose of preventing its identification, and the remaining portion placed near the body, to indicate that he had taken his own life. The point, at which the body of Sergent was found, was in sight of the home of appellant, and his mother deposes, that on the night of the disappearance, she saw a light at that point, between dark and nine o'clock, and a brother of appellant, who deposed, that he was hunting on the mountain on the side of Indian creek, opposite to where the body was found, on that night, saw a light, at that point, and, also, heard the discharge of a gun, in that direction. An apparently disinterested witness deposes, that on Monday night following the disappearance of Sergent, he saw a light at the point, where the body was afterward found. After the finding of the body and the gun near to it, a tenant of appellant's father had a dream, to the effect,

that the portions of the gun, which had been cut off, were hid in the old, vacant house, and he imparted the dream to an older brother of appellant. At the suggestion of the brother a search was made of the vacant house, and, also, the house in which Horse Neece had resided. Neece, who assisted in the search for the body of Sergent, when it was found, at once removed from the house, where he was living. The search of the houses for the missing portions of the gun, did not at first reward the searchers with a discovery but the brother seemed to be dissatisfied, and insisted on a further search, and under a plank, under the stove in the Neece house, to which the brother called attention, the missing portions of the gun were found. The appellant claimed, that he returned to his home from the meeting with Sergent and Neece, near the vacant house, at about dusk, on that evening and was not away from his home during the following night, and in this, he is corroborated, though not strongly by his mother and brother. He, further, claims, that he sold the gun, which was found beside the corpse, on the same afternoon, he procured it, and before reaching home, to a man whom he met upon the road, and whose name he had been unable to learn, but whom, one Alex Gent represented to him to be his brother-in-law. He received for it two dollars in money, and a pint of "who shot." The latter commodity is said to be a species of whiskey. He claims that the transaction took place in the presence of certain parties from Knott county, who happened to be present upon the road. He is corroborated, in this statement by two of the parties, while the other denies, that he was present at all, and the testimony of appellant, and of those corroborating him is greatly contradicted, by several witnesses, and there are circumstances which fatally weaken the story.

Upon a trial of appellant, upon an indictment accusing him of the murder of Sergent, he was found guilty, by the jury, and his punishment fixed at imprisonment for life. From the judgment of the court, based upon the jury's verdict, he has appealed.

The grounds relied upon for a reversal are:

(1) The trial was had at a special term of the court, which was not called properly, and in the manner provided by law, and for such reason the court was not authorized to try the appellant.

(2) The court erroneously, over the objection of appellant, empaneled a jury of the citizens of Pike county, and required him to submit to a trial by it, instead of permitting a trial by a jury of the citizens of the county in which the indictment was pending, and directed the jury to be summoned by an elisor instead of the sheriff.

(3) The court erroneously over his objections, admitted testimony, which was irrelevant and incompetent as evidence, and prejudicial to his substantial rights.

(a) Touching the first ground of complaint, the special term, at which the trial was had, was called by an order of the court, duly made and entered at a regular term. The order specified the case to be tried and the time of the special term. The appellant was present, when the order was made, and thus had actual notice of it. It complies with section 964, Kentucky Statutes, which authorizes the calling of special terms, and when a special term is called by an order made at a regular term, there is no requirement, that it be advertised by a notice posted, at the court house door.

(b) The indictment was returned at a term of the court and continued to the succeeding regular term, at which a trial was had, which resulted in a mistrial on account of a disagreement of the members of the jury. For the trial of the case, at the special term, the court ordered a jury to be summoned from Pike county, which is an adjoining county to that of Letcher, in the court of which the cause was pending, and in the same judicial district. To this appellant objected. A change of venue was not sought by either the Commonwealth's attorney, or the accused, but, the failure to do this would not affect the propriety of the court directing the jury to be summoned from another county, since none of the grounds, which would entitle either party to a change of venue might exist, and yet it would be practically impossible to obtain an impartial jury, in the county. In the order directing the summoning of a jury from Pike county, the court gives as the reasons of its action, the great publicity of the details of the accusation, the wide kinship of both the accused and the deceased, in the county, and the fact, that in securing the jury, which heard the case and disagreed, required a number of days, and the record shows, that the court was so engaged for three days of the term.

Upon the calling of the action, at the special term, the appellant moved the court to discharge the jurors summoned from Pike county, and to empanel or attempt to empanel a jury from the citizens of Letcher county, and supported his motion by his own affidavit and that of others, calling in question the grounds upon which the court had based its decision.

This motion was overruled, and he then formally challenged the entire panel, when a jury had been selected from those summoned from Pike county. The authority under which the court acted was section 194, of the Criminal Code, which is as follows: "If the judge of the court be satisfied, after having made a fair effort in good faith, for that purpose, that from any cause, it will be impracticable to obtain a jury, free of bias, in the county, wherein the prosecution is pending, he shall be authorized to summon a sufficient number of qualified jurors from some adjoining county, in which the judge shall believe there is the greatest probability of obtaining impartial jurors, etc."

This section of the Criminal Code, as applying to certain states of facts has been construed by this court on several occasions, and it has been determined, that its provisions do not violate any constitutional right, which the accused has, as see Roberts v. Commonwealth, 94 Ky. 99; Commonwealth v. Karnes, 124 Ky. 340; Sergent v. Com., 133 Ky. 284; Bowman v. Com., 46 Ky. 486; Mosley v. Com., 84 S. W. 748; Brown v. Com., 49 S. W. 545; Forman v. Com., 86 Ky. 605; Bradford v. Com., 13 R. 154; Massie v. Com., 18 K. L. R. 367.

While these constructions have been made for the guidance of the trial courts, and to announce the rights, which accused persons may have in the premises, this court has held on numerous occasions, that under the provisions of section 281, Criminal Code, it is without authority to review the decision of a trial judge upon a challenge to the panel or for cause, that such power is expressly denied it, and such a decision of the trial judge is declared to be not the subject of appeal. The steps taken, by appellant were a challenge to the entire panel of jurors, or for cause. Logan v. Com., 174 Ky. 90; Sergent v. Com., 133 Ky. 284; Mosely v. Com., supra; Howard v. Com., 118 Ky. 1.

Section 193, Criminal Code, has reference to the sheriff of the county wherein the court is held, and in the instance of his disqualification another person may

be designated to summon the jury. In this case the sheriff was a kinsman of the deceased, and such was a sufficient cause to authorize the court to designate another person to perform the duty, of summoning the jury, especially after objection had been made to the sheriff performing the duty of summoning jurors, by the appellant. Allen v. Com., 11 K. L. R. 555.

(c) Touching all the rulings of the trial court, upon the admission of testimony, complained of, it should be said, that the evidence of the guilt of the accused, which was offered, consisted of a great number of disconnected facts and circumstances, and declarations of the accused, which, if true, pointed with more or less certainty to his guilt, but, there were no witnesses, who were present and saw the homicide. In an action, wherein circumstantial evidence is, alone, relied upon to prove guilt a wider range in examination is permissible, than when eye witnesses are produced. Wendling v. Com., 143 Ky. 597. When, however, this is said, it does not mean, that the proof of anything irrelevant to the issue may be made, or that evidence, which is incompetent for any reason can be heard, or that the admission of the proof of irrelevant facts, which have a prejudicial tendency, would not be fatal to a judgment. It does mean, how-ever, that every relevant fact and circumstance, which tends to connect the accused, with the crime, with the guilt of which he is charged, is admissible, and the evidence of no fact or circumstance connected with the principal transaction, from which an inference as to the truth of a disputed fact can reasonably be made, will be excluded, and any legal evidence of any fact is competent, the proof of which will shed light upon the disputed fact and when considered with other evidence in the case, its relevancy appears. Experience has, furthermore, demonstrated, that in the record of jury trials, where the record is so voluminous, as this one is, and filled with the testimony of witnesses of every degree of intelligence, it is an unusual circumstance, if errors, more or less prejudicial, do not creep into it, arising from inadvertence, undue zeal of counsel, and misapprehensions of the court, and hence, if reversals of the judgments, arrived at, otherwise by fair and orderly trials, were made because of every error, which may appear upon the record, few of the judgments following such protracted trials would be allowed to stand, and the reason for the reversals would be without any real substance

in fact. Hence, following the admonition of the Code, errors appearing upon the record, which are not prejudicial to the substantial rights of a litigant, upon appeal, are disregarded, and it is not only the province but the duty of this court, to determine in the light of the entire record, whether the errors found therein are such as have affected the real rights of a party and prevented him from having a fair trial, upon the real issue to be decided. With the above general observations, in mind, the errors complained of as prejudicial to appellant's substantial rights will be considered.

(c1) The witness, Mrs. Neece, was permitted to testify, that on the Friday afternoon preceding the death of Sergent, he passed her home, going in the direction of the home of the accused, with a jug in his hand, and making inquiry for the accused. Edith Sergent, the daughter of deceased, was permitted to testify that upon his leaving his home on that afternoon, he said that he was going to see the accused to collect a sum of money, which accused owed to him and that he took with him a jug, in which he said he was intending to procure whiskey. It was both relevant and competent to prove the meeting of the accused and deceased on that afternoon, and that he made inquiry of the whereabouts of the accused as explanatory of his purpose while in the act of going and that he had a jug with him might be as properly proven as that he was on horse back, but, it is objected that the proof of the declaration that he intended to procure whiskey was not competent because hearsay and irrelevant, and was intended to indicate to the jury, that the accused was engaged in the illicit sale of whiskey and thereby created a prejudice against him in the minds of the jury. The declaration by deceased of his intention to procure whiskey in the jug was not competent as evidence as it shed no light upon the issues to be decided and no other fact proven in the record made it relevant, and if the testimony had the effect only of proving that the accused was engaged in selling liquor contrary to law, it would have been prejudicial, but the error was harmless as the deceased according to the declarations proven did not intimate that he proposed to procure whiskey from the accused, but was intending to obtain money which he owed him and there is nowhere intimated in the entire record that the accused was engaged in the traffic of whiskey. If the declaration of deceased that he was going to see the ac-

cused and his inquiry for him upon the road was incompetent as hearsay, the proof of their admission was likewise harmless since other evidence as well as that given by the accused himself proved that deceased did visit him upon that occasion, as well as the object of the interview, and neither of these facts is disputed.

(c2)  The clerk of the county court was permitted to testify that several months before the homicide the accused applied for and obtained a license to marry Edith, the daughter of the deceased, and he stated at the time that the girl was twenty-three years of age, Edith Sergent was permitted to testify that she did not know of the obtention of the license until afterward when she heard the accused tell her mother of it and requested permission to marry the girl, and that the mother cautioned the accused not to permit the deceased to know of it.  Edith further testified that she had never promised to marry the accused.  At the time the accused was talking to her mother, he said in substance that it was Elijah's (Sergent's) day now, but that it would be his day at some future time.  While discussing the subject of having obtained the license to marry the girl and having been indicted in connection with it, the accused again said to a witness, that "it was Eljah's day now but would be his some other time."  To another witness who some time after the procurement of the license inquired of him when he was going to marry the girl, the accused replied that he was not going to marry her at all, that he just procured the license to satisfy Sergent about his wife.  To several other witnesses with whom the accused discussed the fact of his having obtained the license, at different periods of time, preceding the homicide, he said in substance that he was not intending to marry the girl, that he would rather have her mother, Sergent's wife, or that if he was intending to take either one, it would be the mother.  To another with whom the accused was discussing the fact of his having been indicted for an offense growing up, out of his procurement of the license, he said that he would procure witnesses and prove that when "Jane" was engaged in peddling, that he and she interchanged letters by leaving them in a certain rock upon the road.  All of the foregoing testimony was objected to and is now complained of as being incompetent and irrelevant.  It should be observed that the Commonwealth's attorney did not undertake to prove the fact of the accused having been indicted for

an offense growing up out of his procurement of the marriage license, or that the indictment was procured by the deceased, and the proof of such fact would necessarily have to have been made by the production of the indictment. Martin v. Com.

The fact of the indictment appears in the record only in the conversations between accused and the witnesses who testify in regard to his statements concerning it and the mention of it is in the nature of inducement to his other declarations. The accused deposed without contradiction, that the indictment was dismissed at the solicitation of deceased and whether or not he procured it does not appear. The conversations detailed by the above mentioned witnesses were, however, competent as evidence in this case under all the circumstances of it as well as the fact of the procurement of the marriage license. If the accused had not obtained consent of the daughter of deceased to marry him, when he obtained the license he evidently contemplated the eventual consummation of the marriage and, thereafter hoped to secure such consent and marry her, but it is evident that deceased stood in the way of securing his end, and as long as he lived would reasonably be supposed to be an obstacle. It is not a reasonable conclusion, that one would obtain a marriage license, without intention to consummate the marriage. The accused renders the evidence competent and relevant by his own testimony to the effect, that the girl had agreed to marry him, and his declaration, that it was the girl's father's day now, but it would be his at some future time, is susceptible of the inference, that he would remove the obstacle. Evidence which tends to prove an intent or motive for the doing of an act is always competent, as against one accused of a crime, and the prosecution is not restricted to proving that the accused was impelled by a single motive, but, may prove several. The existence of a motive is indicative of the probability of guilt, as the absence of a motive is indicative of innocence. Motive has been defined to be an inducement, reason, cause or incentive for the doing of an act. Ellis v. Com., 146 Ky. 729. The witnesses who deposed that the accused declared, that he did not intend to marry the daughter, but preferred the mother; that he procured the license to marry the daughter, to satisfy the deceased about his wife; and that he had carried on an exchange of letters with the wife of deceased; together with testimony of the accused,

that deceased was exercised about the reported intimacy of accused with his wife, tends to prove another motive on the part of the accused for the commission of the crime. The record shows the accused to have been a frequent visitor at the home of deceased, and if a liaison existed between him and the wife of deceased, nothing could be more in the way, than the excited and suspicious husband. It is objected, that when accused said that he and "Jane" exchanged letters through a deposit of them in a rock, he did not say that it was Sergent's wife, but her name was "Jane," and the conversation was touching the deceased and the trouble of accused with him, and the question of whether his reference was to the wife of the deceased, was for the decision of the jury.

(c3) The testimony in regard to the accused's procurement of the gun, which was found near the body of deceased, is objected to, upon the ground, that he did not procure the gun, until after the death of deceased, and for that reason, could only be evidence against him, as an accessory after the fact. With this contention we can not concur. It can not be definitely fixed, from the evidence, when the homicide was committed. One witness, deposes to having seen a light, presumably made by a fire, at the point, where the body was found, and where the homicide evidently occurred, on Monday night, which was after the accused procured the gun. If the deceased had been slain before the accused procured the gun, the fact, that it was found at the body, and mutilated as it was, would be competent evidence tending to prove his connection with the crime and an apparent attempt to conceal it by causing an appearance of suicide and the disfigurement of the gun to conceal its identity.

While there are minor errors in the record, in the admission of testimony, there are none, which prejudice the substantial rights of the accused; the evidence is sufficient to support the verdict; the jury from all the evidence found the accused to be guilty, and no sufficient reason appears to set aside its verdict, and the judgment is therefore affirmed.