## Saltsman v. Commonwealth.

(Decided March 20, 1936).

CHARLES E. WHITTLE for appellant.

ROSCOE VINCENT, J. J. LEARY, and GUY H. HERDMAN, Assistant Attorneys General, for the Commonwealth.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—
Affirming.

Dillard Saltsman appeals from a five-year sentence for manslaughter.

It is first insisted that the court erred in not instructing the jury to find appellant not guilty on the ground of self-defense. This contention requires a review of the evidence. The homicide occurred Sunday night, December 9, 1934. Eddie Carroll, Coy Meredith, and Hubert Carroll gathered at Earl Carroll's store at Prosperity, in Edmonson county. All of them were drinking, and about 11 o'clock Earl Carroll asked the others present to take Eddie Carroll home. Appellant lived in the other direction, but went along with Eddie in company with Hubert and Coy. When they got in front of the home of Marion Napper, the following occurred, according to Claude Napper, who was in the house in bed:

"A. And someone said, 'I'm going to stop here.' That was all I could understand. I couldn't understand all they were saying. The windows was closed. Somebody said he was going to stop. Somebody said he was going to shoot, and he said, 'God damn you, do it and then talk about it,' and then a gun fired and someone hollered and says, 'Oh, you've shot me'; and then someone says, 'I can't help it'; and he says 'God damn you, you could have helped it.' Then he hollered, 'Oh, you've shot me.'"

According to Hubert Carroll, he had some trouble with Eddie five minutes before the killing. Either Eddie or somebody used a knife on him and cut his coat. His account of the difficulty is as follows:

"A. Well, we was going out the road there with him, taking him home, and we got right there by Marion Napper's and he said he was going in there, and I told him he'd better come on and go on home, and him and Dillard kind of got into it some way or other. I wasn't up very close to them. I don't know what was said—whether anything much or not. Dillard had Eddie backed in a ditch, but he wasn't up in that close of him (indicating with his hands)."

Again he said:

"Eddie kind of staggered back over in the ditch, and Dillard walked up and had his gun throwed on him, and I told him to put it in his pocket."
Later on he said:

"Yes, sir, I believe it was pointed mighty near at him. I told him to put it in his pocket, he was liable to shoot somebody, and he did; and we walked back up in the road and they got into it some way or other, and he shot him."

He further testified that he was within eight or ten feet of Eddie and did not see Eddie with anything. Coy Meredith testified that he saw Eddie with a knife right before. Eddie walked back to him and told him to go back out to the store, and he told him to put his knife in his pocket and he would go on. Eddie then went up where they were. Witness also said:

"He said, 'Don't do that' or something. Anyhow he was there, with his knife, and he said he was going in at Marion's, and he says, 'No, let's go on up the road, and if you do I'll shoot you.'"

Witness also said:

"He was there with his knife and Dillard—he said, 'I'm going in at Marion's,' and Dillard told him, 'No, let's go on up the road,' and he went towards Dillard, and he says, 'I'll shoot you.'"

The witness was impeached by an affidavit made shortly after the difficulty, which contained no reference to any knife. Marion Napper, who left his home and went out into the road after the shooting, heard appellant say that he and Ed were in a tussle over the gun, and the old gun went off and shot him. At that time Eddie was lying in the ditch by the side of the road.

On the other hand, appellant testified as follows: He went with the boys up the road because Earl asked him to help Hubert take Eddie home. Eddie and Coy first got into a scuffle. He said, "Let's get them and make them go on up the road." Eddie said, "By God, I'll not go until I get ready," and jerked his knife out and got hold of Hubert. Witness got hold of Eddie and told him to turn loose. When he got down the road a little piece Eddie said, "It seems like you're sticking your damn bill in it," and jerked his knife out

and came at witness. Witness kept backing and told him to stop. Eddie would not stop. Witness got back against the bank and shot him. Witness shot Eddie because Eddie was after him with a knife. He fired only one shot, and that shot passed through his left arm.

Analyzing the evidence, we have this situation. According to appellant, the deceased, Eddie Carroll, was advancing upon him with a knife, and after backing some distance he shot the deceased in order to save his own life. In this he is corroborated to a certain extent by Coy Meredith, who testified that the deceased had a knife, though in his affidavit taken shortly after the affair he failed to make mention of any knife. On the other hand, we have the testimony of Hubert Carroll that he did not see the deceased with a knife at the time, and that appellant had deceased backed into a ditch at the time he shot the deceased. In view of the conflict in the evidence, the question of appellant's guilt was for the jury, and it cannot be said that its verdict is flagrantly against the evidence.

Another contention is that the jury was prejudiced by the following: After the jury had been sworn, the commonwealth's attorney proceeded to call every murder case on the docket and had the defendants called before the jury and required to plead to the indictment and the charges against them. Over the objection of appellant, the court proceeded to qualify the whole panel in all the other cases, and asked if they were related or had any opinion as to the guilt or innocence of the defendants in certain cases. All of these cases were murder cases, and the victims were prominent people. One victim had his throat cut and one was shot and robbed of $1,100. One member of the jury was a brother-in-law of the victim, who had his throat cut, and had been active in and had employed counsel to assist in the prosecution. One other member of the jury was related to one of the victims who had been killed. It is argued that the parade of all the criminals before the jury had the effect of inflaming their minds to such an extent as to prevent them from giving appellant a fair trial. It is the duty of the court to expedite the business of the court as rapidly as possible, and to that end the docket may be called and the de-

fendants required to plead at any time. One who is charged with a crime cannot always have the setting to his own liking, and must necessarily take the risk of having brought to the attention of the jury the fact that there are others who have been indicted and must be tried for the crimes with which they are charged. Doubtless, too, the members of the jury were already aware of the crimes that had been committed, and the calling of the cases and the appearance of the defendants added nothing to what they already knew. We are not disposed to the view that appellant's substantial rights were prejudiced by the action of the court.

Judgment affirmed.