## Stumbo v. Commonwealth.

(Decided April 25, 1937.)

BOND. & BOND and W. A. DAUGHERTY for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

Walk Stumbo, Basil Hamilton, and Daniel Akers were indicted for the murder of Lawrence Roberts. Upon a separate trial, Stumbo, the appellant, was convicted of manslaughter and sentenced to three years' imprisonment.

At the primary election of August 1, 1936, Stumbo and the deceased, Roberts, were officers in Tickey precinct of Floyd county. They, with others, went to Prestonsburg to deliver the ballot boxes. While in town some if not all of the parties became intoxicated. On the return trip in a truck driven by Willard Bowling, all of them got off at the mouth of Mud creek, except the driver and Roberts, who drove up the highway a short distance to the home of Dewey Roberts, the latter's son, for a little while. The others walked up the creek road expecting to be overtaken. Basil Hamilton fell behind the others or stopped on the way, and when the truck came along he climbed into the cab where Roberts was riding and assaulted him with a knife. Roberts pulled out a $5 bill and said: "Get up off of me. I will give you this five dollar bill if you will get up off of me." Akers, a constable, who was one of the party, came up and pulled Hamilton off of Roberts who, with the driver, got out on the same side of the truck. Stumbo came up and said to Roberts:

"You have done me dirty once but you won't do it any more."

Roberts, an elderly man, and lame, begged Stumbo and his associates not to kill him, but while he had his arms

raised, with only the money in his hand, Stumbo shot and killed him. The three men came around the truck where Roberts lay and, the witness being threatened, fled. The foregoing is the substance of the more material evidence of the driver, who seems to have been disinterested and sober. Other witnesses not of the party substantially corroborate Bowling.

The defendant's evidence is that Basil Hamilton and John Hamilton stopped at a store while he, Newsome, and Akers went on. Presently the truck came along and stopped near them. He heard some loud talking on the truck, and Akers went back to it. As he (the defendant) and Newsome got within 25 yards of it, Akers said:

"Come down her and help me part these fellows." Akers was trying to get a knife away from Basil Hamilton, whom he jerked out of the truck. Roberts on the other side of the truck drew a pistol, cursed him, and stated he would kill him. He (the defendant) admonished him not to do that, but nevertheless he started shooting across the truck. Hamilton fell in a ditch and Roberts turned his pistol on the defendant and, with an oath, declared his purpose to kill him. He fired and hit him (the defendant) in the heel. He then drew his pistol and shot at Roberts three times, the third shot taking effect. Other witnesses, including Akers, more or less corroborate the defendant, and a pistol was offered in evidence as being that which Roberts had at the time. The defendant testified that he was summoned by Akers, the constable, to help preserve the peace and to separate Hamilton and Roberts. However, he stated that since Akers had pulled Hamilton out of the truck and Roberts had gotten out on the other side, he didn't see anything to do and was going on to get out of the way when Roberts began shooting at him and he returned the fire.

The court did not instruct the jury as to any right the defendant had by reason of having been summoned by the constable, and this omission, it is argued, entitles the defendant to a reversal of the judgment. It is an elementary rule that no instruction is necessary upon a theory of defense which is not authorized by the evidence. Wilson v. Commonwealth, 243 Ky. 333, 48 S. W. (2d) 3. The defendant was not called upon to assist in

making an arrest and required to respond, as provided by section 41 of the Criminal Code of Practice. But assuming that the summons had that effect, the defendant did nothing toward that end. He was walking away when fired upon by Roberts, he testified, and his justification for the killing was self-defense and not because of any interference in the discharge of whatever duty might have been imposed upon him by the call of the constable. Kidd v. Commonwealth, 229 Ky. 87, 16 S. W. (2d) 769; Eldridge v. Commonwealth, 240 Ky. 193, 41 S. W. (2d) 1096; Kinder v. Commonwealth, 263 Ky. 145, 92 S. W. (2d) 8. Cf. Hurd v. Commonwealth, 257 Ky. 315, 78 S. W. (2d) 9; Hatfield v. Commonwealth, 264 Ky. 721, 95 S. W. (2d) 562.

During the impaneling of the jury, the grand jury submitted its report and it was read publicly by the County Attorney. It was, in part, that 239 indictments had been returned, a large portion of which were for felonies, including 12 for willful murder, committed in Floyd county. It expressed the opinion that there had been no improvement in the general condition and "that a crime wave throughout our county is now in progress such as we have never observed before." The report commended the circuit judge and other officers for their efforts and co-operation in trying to correct the crime conditions in the county. Following the reading of the report, the circuit judge commended the grand jury and suggested that the combating of crime had been going on since the beginning of time and that all the people must stand together and determine that they would no longer stand for the crime and call a halt upon it. Other portions repeated the court's condemnation of crime in the county, and suggested that the people should no longer tolerate it. The defendant then moved the court to discharge the five jurors who had been tentatively chosen and the entire panel from which others were to be selected because they were disqualified by the reading of the report of the grand jury and the statements of the court. The motion was overruled and exception reserved. The defendant under the evidence was guilty of murder or of manslaughter, demanding a much more severe punishment, or else he was entitled to an acquittal. The penalty of three years' imprisonment manifests leniency upon the part of the jury. The verdict negatives any idea of a prejudicial effect of the reading

of the grand jury's report or the comment of the judge in the hearing of the panel. It is not necessary, therefore, to decide whether or not the statements were improper. But see Taylor v. Commonwealth, 240 Ky. 450, 42 S. W. (2d) 689; Strand Amusement Company v. Commonwealth, 241 Ky. 48, 43 S. W. (2d) 321; Saltsman **v.** Commonwealth, 263 Ky. 400, 92 S. W. (2d) 378.

The judgment is affirmed.