# Hamilton v. Commonwealth.

(Decided Oct. 4, 1938.)

C. B. WHEELER for appellant.

HUBERT MEREDITH, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Basil Hamilton, Walk Stumbo, and Daniel Akers were indicted for the murder of Lawrence Roberts. The indictment charged each of the accused with shooting and killing Roberts, and also alleged that they entered into a criminal conspiracy, the object and purpose of which was the death of Roberts, and, while such conspiracy existed and in pursuance thereof, one of the accused shot and killed Roberts, the others being present aiding and assisting him. Upon a separate trial, Walk Stumbo was convicted of manslaughter and sentenced to three years' imprisonment. He appealed from the judgment, and it was affirmed. Stumbo v. Com., 268 Ky. 443, 105 S. W. (2d) 139. Thereafter, Basil Hamilton was tried in the Floyd circuit court, convicted of manslaughter, and sentenced to five years' imprisonment. On this appeal, he seeks a reversal of the judgment on three grounds: (1) Refusal of the court to grant him a continuance; (2) error of the court in overruling his motion for a directed verdict of acquittal; and (3) errors in the instructions.

It appears that Willard Bowling, the chief witness for the commonwealth, was under indictment at the time of appellant's trial charged with false swearing in the case of Commonwealth v. Walk Stumbo, and that the case of Commonwealth v. Bowling had been set for trial at the same term of court. The appellant moved for a continuance until after Bowling's trial. It is argued that the court erred in overruling his motion, but it is not necessary to consider this ground since we have concluded that ground No. 2, relied upon by appellant for a reversal of the judgment, must be sustained.

The killing occurred on Mud creek in Floyd county about 8 o'clock in the evening, August 1, 1936. It was on the regular August primary election day, and all of

the persons present at the time of the shooting had been at Tickey precinct during the day and some of them had served as election officers. Lawrence Roberts and Walk Stumbo were the Democratic election officers, and Frank Parsons and Daniel Akers were the Republican election officers in Tickey precinct. Willard Bowling lived near Prestonsburg, and Mervin Hamilton employed him to take him to the polling place in Tickey precinct. They went in Bowling's Chevrolet truck. Bowling remained at the polling place until the polls closed, and he was then employed to take the officers, and the ballot boxes, to Prestonsburg, the county seat. Mervin Hamilton and the deceased rode with him in the cab, and Frank Parsons, Daniel Akers, Green Newsome, John Hamilton, and Basil Hamilton rode in the bed of the truck. The ballot boxes were delivered at Prestonsburg, and all of the parties except Parsons returned to Mud creek in the truck with Bowling. Mervin Hamilton and Roberts rode in the cab with Bowling on the return trip. It seems that all of the parties except Bowling lived on Mud creek. When they reached Mud creek, Roberts requested Bowling to drive to the home of his son, Dewey Roberts, who lived on the main road three or four hundred yards beyond Mud creek. Walk Stumbo, Daniel Akers, John Hamilton, Basil Hamilton, and Green Newsome got out of the truck and started walking along the road up Mud creek, it being understood that Bowling would pick them up when he returned from Dewey Roberts'. The truck remained at Dewey Roberts' only a few minutes. Mervin Hamilton got out at Ted Akers' store, leaving Bowling and Roberts in the truck. They overtook Basil Hamilton and John Hamilton about one-half mile from the main road, and Bowling stopped the truck. John Hamilton got on the bed of the truck, and Basil Hamilton opened the door on the right side of the cab and got into the cab with Bowling and Roberts. Stumbo, Akers, and Newsome had walked ahead, and were about one hundred feet further up the road. Bowling testified that this occurred as soon as Basil Hamilton got in the truck:

"After he got in, he opened his knife and got the old man down and laid his knife around his throat and says: 'If you fool with me, I will cut your head off.' He had a five-dollar bill, Lawrence Roberts did, and he said, 'Bass, get up off of me and I

will give you this five-dollar bill.' And I stopped the truck."

He further stated that Daniel Akers, who was a constable, came running down the road, opened the door of the cab, and pulled Hamilton out of the truck. Bowling and Roberts got out of the truck on the left-hand side. He then saw Stumbo coming down the road with a pistol. Stumbo said: "You done me dirty once, but you won't no more." The shooting started from the left side of the truck. He did not see Basil Hamilton do any of the shooting, but he did see Stumbo fire several shots. Roberts was shot once through the body. He walked about thirty feet behind the truck, and fell in the road. Several witnesses who appeared on the scene shortly after the shooting found him lying on his face with a $5 bill clutched in his hand. Bowling testified that there had been no trouble between any of the parties on the trip to Prestonsburg and return until Hamilton got into the cab of the truck on Mud creek. This was the substance of the testimony for the commonwealth.

Appellant testified that, when he opened the door to get into the cab of the truck, Roberts objected and told him to ride in the bed of the truck. Hamilton told him that he was crippled, and insisted on riding in the cab. Roberts continued to quarrel with him, and started to draw his pistol. Hamilton grabbed him and was holding him to prevent him from using the pistol when Akers appeared and pulled him out of the truck. Akers led him to the rear end of the truck where Hamilton was explaining to him the cause of the trouble when Roberts began shooting at them. Hamilton fell in the ditch to avoid being struck, and Akers ducked behind the bed of the truck. At this point Walk Stumbo appeared on the scene, and Roberts turned and shot at him, whereupon Stumbo shot at Roberts. Stumbo was shot in the heel. Akers corroborated Hamilton. He testified that he heard the argument in the truck between Hamilton and Roberts, and ran down to the truck and found Hamilton with his left arm around Roberts and a knife in his right hand. Believing that he was making an unprovoked assault on Roberts, he pulled him out of the cab and placed him under arrest. He led Hamilton to the rear end of the truck when Roberts began shooting in that direction. Hamilton fell in the ditch, and Akers

742

believed he had been shot. Roberts then turned and shot at Stumbo, and Stumbo returned the fire. Roberts walked down the road, and, as he passed Akers and Hamilton, the latter grabbed a pistol from Roberts' hand, and Akers took the pistol from Hamilton. Roberts walked a few feet and fell. This pistol was introduced at Stumbo's trial, and identified by some of the witnesses as Roberts' pistol, but it could not be located when Hamilton was tried.

We are unable to find any evidence of a conspiracy or of any concert of action between Hamilton and Stumbo. Even if Hamilton wrongfully assaulted Roberts in the truck, that difficulty had ended. Hamilton had been placed under arrest by Akers, and he was not responsible for the acts of Stumbo. It is conceded that Roberts was killed by a shot fired by Stumbo. We are of the opinion that the court erred in overruling appellant's motion for a directed verdict of acquittal.

Some complaint is made of the instruction on manslaughter, but we are not prepared to say it was prejudicially erroneous. However, if another trial is had and the evidence is sufficient to take the case to the jury, an instruction on manslaughter similar to the one in Carnes v. Com., 146 Ky. 425, 142 S. W. 723, should be given.

For the reasons indicated, the judgment is reversed, with directions to grant appellant a new trial.