**Elmer Joseph JAGGERS, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 13, 1968.

Rehearing Denied May 9, 1969.

them. Another serious question not raised by the appellant, but noted with commendable candor by the Attorney General, relates to whether the jury was properly selected in light of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, which was decided after the trial in this case.

According to the evidence, Jaggers killed Copeland by beating him to death with his bare fists and perhaps by striking him with a beer bottle. The evidence is devoid of any hint of mitigating circumstances but rather suggests a completely brutal and inexplicable display of savagery without rhyme or reason. Appellant makes no contention that the verdict is not supported by the evidence.

The first alleged error presented by appellant relates to certain testimony and arose in this manner. A witness was being asked about Jaggers' experience as a boxer, and we quote this question and answer:

"Q. Has he ever boxed professionally for any money?

"A. Yes, sir, in the penitentiary."

Defense counsel immediately moved for mistrial, and the motion was denied, whereupon he moved to discharge the jury, and the motion was denied. The court gave no admonition to the jury, nor was any admonition requested. Appellant relies on Smith v. Commonwealth, Ky., 245 S. W.2d 584; Manning v. Commonwealth, Ky., 328 S.W.2d 421; Roberts v. Commonwealth, Ky., 350 S.W.2d 626; and cases of similar import for the proposition that reversible error was committed because the jury was informed that the accused had previously served a term in the penitentiary. The Commonwealth retorts that the matter of defendant's boxing skill and experience was critically relevant to its case, inasmuch as the charge was that Jaggers had beaten Copeland to death with his fists. The Commonwealth cites Schweinefuss v. Commonwealth, Ky., 395 S.W.2d 370, and 1 Wharton, Criminal Evidence, Section 233

Hubert H. Hevey, Jr., Stuart L. Lyon, David Kaplan, James N. Webb, Louisville, for appellant.

John B. Breckinridge, Atty. Gen., George Rabe, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

Elmer Joseph Jaggers was found guilty of the murder of Bailey Howard Copeland. His punishment was fixed at death by the verdict. Another issue in this litigation was dealt with in Jaggers v. Overstreet, Ky., 412 S.W.2d 238. Appellant presents eleven separate grounds for reversal which we shall discuss without first enumerating

(12th Ed. 1955), as well as 1 Wigmore, Evidence, Sections 215, 216 (3rd Ed. 1940), all of which stand for the proposition that competent material evidence which is relevant to the issues on trial is not rendered inadmissible merely because it may show that the defendant is guilty of another crime. It is said that the evidence is not admitted to prove another crime but because of its relevance to the issues on trial. It is our view that the evidence was properly admitted in the circumstances of this case.

 Appellant complains that the court erred "in allowing the prosecution to introduce a multitude of irrelevant evidence through testimony and exhibits which had little or no probative value but a high degree of inflammatory and prejudicial impact upon the jury." Encompassed in this broadside are complaints that the court permitted the prosecution to "parade witness after witness" whose primary testimony merely related to identifying the body of the victim but which included inflammatory descriptions of "blood and gore" intended to inflame the jury. The examples suggested in appellant's brief are: "He was just beat, that's all I could see and his jaws were twisted and he was blue." And, "Oh, my God, Daddy, there's a man in there with no head." And, "The man was simply beaten to death. It was an awful mess." Appellant cites Bates v. Commonwealth, 189 Ky. 727, 225 S.W. 1085, but we cannot understand what comfort appellant finds in that decision, since the court affirmed the judgment of conviction which was attacked on a ground similar to that under discussion. As noted in Salisbury v. Commonwealth, Ky., 417 S.W.2d 244, the rule prohibiting inflammatory evidence does not preclude the disclosure of the basic facts surrounding the commission of a crime when these facts are relevant to the issues on trial. Clearly, the Commonwealth was on its proof to demonstrate that the decedent had been beaten to death by the defendant. The evidence complained of tended to prove that charge.

 Further complaint is made in the same broadside against admission of photographs—one taken of the corpse and another showing the victim during life with his wife and children. Our inspection of the photographs convinces us that no error was committed in admitting them in evidence. As to the picture of the corpse, what was said in Salisbury v. Commonwealth, Ky., 417 S.W.2d 244, is equally applicable here. Napier v. Commonwealth, Ky., 426 S.W.2d 121. As to the photograph depicting the victim during life, what was said in Carson v. Commonwealth, Ky., 382 S.W.2d 85, 90, is applicable. We are aware of the ruling in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, in which it was held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." We do not think the point under discussion may be characterized as "a federal constitutional error," but even if it could, we are able to declare our belief that it was harmless beyond a reasonable doubt.

 Next, the appellant complains that the trial judge failed to poll the jury after the verdict. The right of a defendant to have a poll of the jury is unquestionable. See Powell v. Commonwealth, Ky., 346 S.W.2d 731, and Temple v. Commonwealth, 77 Ky. (14 Bush) 769, 29 Am. St.Rep. 442. It is recognized in Powell v. Commonwealth, supra, and Asher v. Commonwealth, 221 Ky. 700, 299 S.W. 568 that the right to have the jury polled is one which may be waived by failure to ask for it. There was no request for a poll in this case, although defendant and his counsel were present when the jury returned its verdict in open court. The failure to poll was not erroneous in these circumstances.

 Appellant asserts that he was denied a fair trial by reason of a "carnival atmosphere" which prevailed in the courtroom during the course of the proceedings. Primarily, this charge of error is predicat-

ed upon the fact that on some occasions the trial judge suspended proceedings in order to dispose of other uncontested criminal cases, and this was done in the presence of the jury. The record before us does not disclose any semblance of a "carnival atmosphere." It appears that all matters were handled with appropriate judicial decorum, and the acts done did not prejudice the rights of the appellant. See Saltsman v. Commonwealth, 263 Ky. 400, 92 S.W.2d 378.

A police officer was permitted to testify over defendant's objection that he had remained in the courtroom in disregard of the rule excluding witnesses as provided by RCr 9.48. It is well settled that the trial court, in the exercise of proper discretion, may permit a witness to testify even though the separation rule has not been observed. The officer's evidence related to his own response to a radio dispatch directing him to the place where the body was found, his findings at the scene, and his subsequent actions. Nothing he may have heard while in the courtroom affected the substance of his testimony. The court properly permitted him to testify. Ragland v. Commonwealth, Ky., 421 S.W. 2d 79.

Appellant asserts that the prosecutor was grossly unfair in repeated interjections of prejudicial statements and by re-asking questions to which objections had been sustained, so as to deprive him of a fair trial. If this were so, we should and would reverse, but our examination of the record leaves us unpersuaded that such was the case. It would unduly burden the opinion to pinpoint each incident suggested, and it suffices to say that none of them, individually, nor all of them, cumulatively, had the effect ascribed to them by appellant.

Appellant again attacks the propriety of his being tried before a special judge. That matter was settled adversely to him in Jaggers v. Overstreet, Ky., 412 S.W.2d 238, and is no longer open to debate.

In another generalized point, the appellant contends that the court failed to adhere to the strict standards of proof required in a capital case. In support of this argument, appellant recapitulates the other claims of error he is presenting, but we find no merit in them.

Appellant says that his fingerprints were taken at the time of his arrest and prior to his being advised of his constitutional rights and immunities. If so, no error was committed. See Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908, 916; Napolitano v. United States, 1 Cir., 340 F.2d 313.

Appellant asserts that the spirit of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, was violated when evidence was permitted of certain incriminating statements made by appellant to some of his acquaintances as to how he had accomplished the killing with his bare fists. These statements were not made to any law enforcement officer, nor were they made when appellant was under arrest. They were simply statements purportedly made by appellant which tended to incriminate him but which were not elicited from him in violation of any constitutional right. Nothing in Miranda affords comfort to the appellant in this regard.

Appellant assigns as error the court's ruling permitting Larry Ells to testify for the prosecution in face of the fact that the prosecution had not included the name of Ells in a list of its prospective witnesses which had been furnished to the defense of purposes of voir-dire examination of the jury. In the course of the voir-dire examination, the defense counsel caused all of the witnesses for the prosecution to come before the panel in order to inquire whether any member of the panel was acquainted with any of the prospective witnesses. Ells was jointly indicted with the appellant and had been with appellant and decedent throughout the evening of

the slaying. A sister of Ells was a witness, who was presented before the panel, but none of them knew her. In the course of voir dire, defense counsel made reference to the possibility of testimony from an accomplice which could have referred only to Ells, as he was the only possible accomplice. We think the matter of, permitting Ells to testify in the circumstances recited was one addressed to the sound discretion of the trial judge, and it is our view that the judge properly exercised his discretion in permitting the witness to testify. There is no suggestion that the defendant was surprised by the evidence of Ells, nor that any member of the panel knew him. We are unable to perceive any prejudice resulting to the defendant by reason of permitting Ells to testify.

■ Appellant contends that the court erred to his prejudice in permitting the prosecuting attorney to interrogate three witnesses by using a transcript of their testimony before the grand jury to impeach them. The objection is not well taken because the witnesses acknowledged the truth of their testimony before the grand jury and reiterated the same evidence to the trial jury. The recollection of these witnesses was refreshed by reference to the transcript of the evidence before the grand jury, and in such circumstances the procedure used was proper. See Thacker v. Commonwealth, Ky., 401 S.W.2d 64, 67–68.

■ We have discussed all the grounds for reversal presented by the appellant and have found no merit in any of them. We now turn to consideration of a matter not presented by the appellant but candidly faced by the Attorney General. As noted, Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, was decided after the trial in this case. Witherspoon announced new concepts in the matter of selection of jurors in a case involving capital punishment. The Supreme Court summarized its holding in Witherspoon as follows:

"Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Id. 391 U.S. 521, 88 S.Ct. 1776, 20 L.Ed.2d 784, 785.

The Supreme Court recognized that challenge for cause is proper in a capital case respecting veniremen who say they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them. A careful review of the voir-dire examination in the present case discloses that the veniremen were advised of the nature of the offense and the fact that the prosecution would demand a death sentence. In that framework, members of the panel were asked whether they had conscientious scruples which would prevent their imposing a death sentence *"in this case."* There was no wholesale and blanket exclusion of prospective jurors on the basis of general conscientious scruples or general opposition to the death penalty as occurred in Witherspoon. Rather, the jurors excused for cause in this case stated that their scruples would prevent imposition of a death sentence by them *"in this case."* In our judgment the jury was properly qualified within the ambit of the rule announced in Witherspoon. We are bolstered in our conclusion in this respect by the reasoning advanced by the Supreme Court of Illinois in its recent decision in Illinois v. Speck, Ill., 242 N.E.2d 208, decided September 1968, in which it was noted that "the atmosphere of the proceeding" must be examined in resolving the question whether the jurors were properly selected within the rationale of Witherspoon. The atmosphere of the proceedings in the present case was so vastly unlike the atmosphere prevalent in Witherspoon that we do not regard Witherspoon as dispositive of the case at bar.

The judgment is affirmed.

All concur.