## Johnston v. Commonwealth.

(Decided June 13, 1916.)

### Appeal from Fulton Circuit Court.

1. Criminal Law—Trial—Submission to Jury.—Circumstantial evidence of appellant's guilt, held to be sufficient to carry the case to the jury and uphold a verdict of conviction.
2. Criminal Law—Manslaughter—Instructions.—A manslaughter instruction, when there is no evidence of manslaughter, is erroneous and may be prejudicial to a defendant prosecuted as a principal for aiding and abetting another against whom murder is proven.
3. Criminal Law—Witnesses—Credibility.—Evidence of the bad reputation for morality of a defendant in a criminal prosecution, who has testified in his own defense, is admissible only for the purpose

of affecting his credibility as a witness, and it is the duty of the trial court to so limit by an admonition its consideration by the jury, and his failure so to do may be reversible error when defendant objects and excepts to the admission of such evidence.

4. Criminal Law—Instructions—Accomplice.—An instruction under section 241 of the criminal code is not authorized when the evidence does not show the prosecuting witness was an accomplice.

W. J. WEBB and H. T. SMITH for appellant.

.M. M. LOGAN, Attorney General, and CHAS. H. MORRIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE.—Reversing.

On the 19th day of January, 1916, Lonnie Johnston shot and killed Chester Stowe in Fulton county, and at the January term of the Fulton circuit court an indictment was returned by the grand jury accusing Lonnie Johnston and his uncle, W. T. Johnston, the appellant, of murdering Chester Stowe; that Lonnie Johnston shot him in the back of the head with a shotgun, and that W. T. Johnston was present aiding and abetting in the killing.

At the next term of court appellant was tried upon this charge, convicted and his punishment fixed at confinement in the penitentiary for a minimum term of not less than two years and a maximum term for not more than twenty-one years. Lonnie Johnston was not present or tried at the time, and the record does not disclose why, but it is stated in brief that he was a fugitive from justice.

About two weeks previous to the killing Chester Stowe and his wife, Ida, separated, and she had become a domestic in the home of appellant, at which Lonnie Johnston also resided. A few days before the killing Chester Stowe came to the home of appellant to see his wife and found Lonnie Johnston in conversation with her in the kitchen. This angered Stowe and he warned Lonnie Johnston against talking to his wife, and in the heated argument that ensued the lie was passed.

Mrs. Stowe testified that the next morning she saw Lonnie oiling a pistol and drinking some whiskey, and that he then told her that the trouble between him and Stowe was not over. Later in the day, Lonnie Johnston met Stowe on the levee crossing and angry words were again exchanged.

W. T. Johnston was foreman upon the farm of a Mr. Bondurant and had working for him some forty or fifty cotton pickers, men and women, black and white, whom he was going to pay off on Sunday, the day the killing occurred. Chester Stowe had also done some work for the appellant, who informed him a few days before the killing that he was going to pay off his hands on this Sunday when he would also pay Stowe if he would come to his house at that time. On Sunday morning about nine o'clock a great many of the cotton pickers having appeared, appellant, his wife and a Miss Lizzie King, a school teacher, were paying off the cotton pickers in a front room of W. T. Johnston's residence. While this was being done Stowe rode up, hitched his horse in front of the house, came upon the front porch and looked into the room where the paying off was being done. Some one in the room remarked that Chester Stowe was there. After looking into the room Stowe left the front porch and went around to the rear of the house and engaged in conversation with the cotton pickers who were there, near the kitchen door, waiting to be paid. Almost immediately Lonnie Johnston came up, went through the kitchen and into the room where the paying was being done. When he came into the room appellant said to him that he wished to speak to him just a moment, and the two went into an adjoining room where they remained for a short time. They both returned to the paying-off room, W. T. Johnston resumed his work and Lonnie went to the dresser in the same room and took some shells from a drawer thereof, and then picked up a shotgun which was standing behind a trunk to one side, but rather behind appellant. Lonnie left the room, went through the kitchen, and when he reached the outside door shot Stowe, who was standing about eight or ten feet from the door with his back to it, in the back of the head, killing him instantly.

Mrs. Ida Stowe, wife of the deceased, was in the paying-off room and having seen Lonnie get the shells and the gun followed him to the kitchen door and saw him shoot her husband. She and the only other eye witness who testified about the homicide say that Stowe had his back to the kitchen door and was shot without warning or provocation. Mrs. Stowe went immediately to her husband and supported his head in her lap. A pistol was found in the pocket of Stowe.

When the shot was fired appellant was seated at the table in the front room paying off hands. He raked the money together in a pile on the table, told his wife and Miss King to take care of same, and went to where Stowe lay, having a tablet in his left hand, a pencil in his right and wearing his glasses. Mrs. Stowe was crying and bewailing the death of her husband, and appellant told her not to do that, asked someone to take her away and some of the men to carry Stowe's body into the house. No ill feeling or unfriendliness between appellant and Stowe is shown. The body of Stowe remained in the home of appellant for about two hours, when it was removed, and some time that afternoon Lonnie Johnston was arrested and taken away. At the conclusion of the testimony for the Commonwealth, which is substantially as stated above, appellant filed a motion for a peremptory instruction, which was overruled, and he saved an exception.

Appellant testifying in his own defense denied that he was present or that he aided, abetted or encouraged in any way Lonnie Johnston to kill Stowe, and stated that at all times he advised both parties against any difficulty, and knowing of the ill feeling between them, and having heard that Chester Stowe was there, he took Lonnie into an adjoining room and advised him to avoid trouble with Stowe, and that Lonnie promised him he would not have any trouble. That after getting this promise from Lonnie he resumed his work, did not see Lonnie get the gun or the shells, or know that any trouble was impending; that when the killing occurred he was engaged in making a calculation of the amount due one of the hands and had no knowledge of Lonnie's action.

In rebuttal the Commonwealth introduced five or six character witnesses who testified that appellant's reputation for morality in the neighborhood was bad. The Commonwealth then recalled W. T. Johnston and asked him, after Lonnie had been arrested and taken away to jail, if he did not lean back in his chair, laugh and say to Mrs. Stowe, "I told Lonnie he would not have to stay in jail over a day or two until I would come and get him out." To which question defendant objected, and his objection being overruled, saved an exception. His answer to the question was "I did not."

Appellee then called Mrs. Stowe and asked her this question: "Mrs. Stowe, you have just heard me state the question to Mr. Johnston at the time Lonnie was

carried away by the officers, that Mr. Johnston leaned
back in his chair and laughed and made the remark in
your presence that he told Lonnie that he would not have
to stay in jail over a day or two until he would come and
get him out. Tell the jury whether or not he made that
remark." To this question appellant objected, and his ob-
jection having been overruled saved an exception. Mrs.
Stowe's answer was: "He certainly did."

At the close of all the testimony appellant renewed
his motion for a peremptory instruction which was again
overruled, and an exception saved. The court gave the
jury murder, manslaughter and reasonable doubt instruc-
tions and an instruction defining "wilful," "malice
aforethought" and "felonious." Appellant's motion for
a new trial having been overruled, he has appealed, and
for reversal relies upon the following grounds: (1) The
refusal of the court to give the peremptory instruction.
(2) Because the verdict is against and not supported by
the law or evidence. (3) Because the court misinstructed
the jury. (4) Because the court erred in permitting im-
proper, incompetent and prejudicial evidence to go to the
jury over his objections and exceptions.

1. The evidence against appellant is admittedly
meager, but it is insisted by the Commonwealth that it
was sufficient to take the case to and support the verdict
of the jury. In this we concur because the evidence shows
that Stowe came to the home of appellant upon request,
and after appellant knew that Stowe was there he called
Lonnie Johnston apart, held a private conversation with
him, immediately following which Lonnie got the gun and
shells in the room where appellant was sitting, which was
seen by the others who were present in the room, and
thus armed, went at once and killed Stowe without hav-
ing uttered a word to any one. It seems to us that these
circumstances though meager and showing no motive
upon the part of appellant for the crime were sufficient
to authorize a submission to the jury and to support the
verdict.

2. As will be seen there was no evidence either of
manslaughter or self defense. Upon this evidence Lonnie
Johnston was guilty of murder, and if this had been his
trial he would not have been entitled to either the man-
slaughter or self defense instruction. It is conceded by
the attorney for the Commonwealth that appellant was
entitled to an instruction upon every phase of the evi-

dence to which Lonnie Johnston would have been entitled had he been on trial, but no more. It therefore results that the giving of the manslaughter instruction, to which appellant objected, was erroneous, and that the jury found the appellant guilty under an erroneous instruction of a crime that was not proven by the testimony is conclusive that the giving of the instruction was prejudical.

It can well be argued, and is convincing, that upon the confessedly meager testimony against appellant in this case, the jury would have been unwilling to have convicted him of murder, the only crime proven, and that it was prejudicial to his rights to authorize the jury to convict him of a lesser crime that was not proven.

Appellant also contends that he was entitled to an instruction upon the evidence of Mrs. Ida Stowe as an accomplice as provided by section 241 of the Criminal Code, but the testimony shows that she was not an accomplice; Levering v. Commonwealth, 132 Ky. 666; Niccoll v. Commonwealth, 169 Ky. 493, and besides there were other witnesses for the Commonwealth to every material fact relating to the killing and defendant's guilt, and under the circumstances of this case such an instruction was not authorized.

3.   The court in admitting the testimony of character witnesses which was competent here only as to the credibility of appellant as a witness, did not admonish the jury as to the purpose for which said testimony should be considered, and appellant vigorously protests that this was reversible error, while appellee insists that this question is not before us because it is not one of the errors assigned as a ground for the motion for a new trial. One of the grounds assigned is that the court erred in the admission of incompetent evidence, and another that the court failed to properly instruct the jury, but the failure to admonish the jury upon this question is not specifically stated as a ground for a new trial, nor did appellant move the court to so admonish the jury. We are of opinion that in this character of a trial the question is saved by an objection to the evidence and an exception to its admission, and that the question is before this court when errors in the admission of evidence and instructions given are reasons assigned for a new trial. It is not necessary, however, to discuss these questions here as the judgment must be reversed because of the error in the instructions. It is sufficient to call attention to the fact

that in a criminal action it is error for the court to fail to define the purpose, by an admonition, for which such evidence is introduced when the witness affected is the defendant who has testified in his own behalf; and when the evidence is not convincing of the defendant's guilt, may be a prejudicial error, though not prejudicial when the evidence of guilt is clear and convincing and the trial is otherwise fairly conducted. Newman v. Commonwealth, 28 K. L. R. 81; DeBoe v. Commonwealth, 146 Ky. 696; Ruark v. Commonwealth, 150 Ky. 47; Holly v. Commonwealth, 18 K. L. R. 441; Redden v. Commonwealth, 140 Ky. 94; Fueston v. Commonwealth, 91 Ky. 230; Collins v. Commonwealth, 25 S. W. 743; Ochsner v. Commonwealth, 128 Ky. 766.

4.    Appellant also complains of the action of the court in permitting the appellee, at the close of the evidence in rebuttal, to recall appellant for the purpose of asking him about the alleged conversation with Mrs. Stowe after Lonnie Johnston had been arrested and taken away from the house, and in permitting Mrs. Stowe to be introduced to contradict him upon this question. Appellee had the right upon cross-examination to ask appellant questions tending to show that he was not an impartial witness as between deceased and Lonnie Johnston, and to contradict by other evidence his answers to such questions, Hayden v. Commonwealth, 140 Ky. 636, and we think it was competent for this purpose to ask appellant whether or not he had made the alleged statement to Mrs. Stowe and upon his denial to contradict him by her evidence. This evidence, however, was permissible only to affect his credibility as a witness, and the same necessity existed to admonish the jury of its purpose as to the testimony in reference to appellant's moral character.

For the reasons indicated the judgment is reversed for proceedings consistent herewith.