## Burns v. Commonwealth.

(Decided March 16, 1923.)

### Appeal from Leslie Circuit Court.

1. Criminal Law—Evidence of Other Offenses is Admissible to Show Motive.—Under an exception to the rule that evidence of other offenses is inadmissible, evidence of such offenses may be admitted where it has such a relation to the charge being investigated as to show motive.

2. Criminal Law—Evidence Previous Shooting Scrape Occurred Between Accused and Deceased is Competent.—In a prosecution for murder, evidence that a previous shooting scrape had occurred between accused and deceased, without any evidence of the details of that affray, is admissible to show motive for the subsequent homicide.

3. Criminal Law—Admonition Limiting Effect of Evidence of Other Offenses Held Applicable to Both Witnesses Testifying Thereto.— Where two witnesses for the commonwealth successively testified to a previous difficulty between accused and deceased, the admonition of the court at the conclusion of the testimony of the second witness that the evidence could be considered only to show motive was applicable to the testimony of both witnesses, so that the failure to give such admonition after receiving the testimony of the first witness was not reversible error.

4. Homicide—General Threats by Accused are Admissible when Circumstances Show Particular Reference.—General threats by accused are admissible in a prosecution for murder where the circumstances under which they were uttered are such as to show they had reference to particular person or class.

5. Homicide—General Threat Uttered Short Time Before Homicide Held Admissible.—Where there was evidence that defendant and deceased had had a previous difficulty resulting in a shooting scrape, evidence of a statement by accused when he bought some cartridges that he was going to kill some one before daylight, which was uttered only a short time before deceased was killed, related to deceased with sufficient probability to render it admissible.

L. D. LEWIS and M. C. BEGLEY for appellant.

CHAS. I. DAWSON, Attorney General, and T. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Appellant was indicted charged with the murder of Tom Hollen, his father-in-law, and upon his trial was found guilty and his punishment fixed at life imprison-

ment. His motion for a new trial was denied, and he has appealed.

The evidence for the Commonwealth shows that some time in December, 1922, appellant and his brother, Levi Burns, and decedent Tom Hollen and John Hollen, his brother, were together near their homes in Leslie county, and the four started to a point some four or five miles away for the purpose of procuring some whiskey; that they reached the place at or about dinner time, bought the whiskey and ate dinner; that each of them drank some of the whiskey and started back to their homes shortly thereafter, each of them riding a horse or a mule; that they continued to drink on the road home, and about dusk before they had reached home they appeared to have been riding in single file with Levi Burns in front, deceased, Tom Hollen, just behind him, the defendant Green Burns riding next a few steps behind, and John Hollen, decedent's brother, bringing up the rear; that while they were thus riding defendant pulled up his mule, drew his pistol and fired two shots, one of which took effect in Tom Hollen's back and entered under the right shoulder; that thereafter appellant got off his mule and three or four other shots were fired and appellant and his brother left the place of the shooting; that at the time of the shooting decedent was only about eight steps away from defendant, was doing nothing to him and was not saying anything to him; that deceased had no weapon except an ordinary pocket knife.

Defendant's version of what occurred is not essentially different from that of the witness John Hollen up to the time the shooting was done. He admits they had all been after the whiskey and had all been drinking, but says that just before the shooting John Hollen was demanding another drink of whiskey and Tom Hollen was telling him he had enough, but that finally they, the two Hollens, got off their horses or mules and each took a drink and the shooting immediately began thereafter, but he does not know who shot Tom Hollen, as it was dark. He also says his brother, Levi, got off of his horse, or mule, and that he also fired some shots but that he, appellant, fired no shots and had no pistol on that occasion.

Levi Burns, the other eye-witness, is not introduced, but the statement of appellant that he had no pistol on that occasion is contradicted by another witness who had met him that day and from whom he had attempted

to buy cartridges, and he is shown by two other witnesses to have admitted that he shot decedent.

On the trial the two sons of the decedent, Charles and Henry Hollen, were permitted to testify for the Commonwealth that about a year before the defendant and decedent had had some trouble and had shot at each other; but that it was after dark and they could not be certain, but it appeared from the blaze of the pistols that they were shooting at each other. Charles was the first of these two introduced and the defendant objected to the introduction of his evidence and the objection was overruled. Defendant then moved to exclude the whole of this testimony and the court overruled that motion, but admonished the jury as follows:

"Gentlemen of the jury, the motion will be overruled. The jury can consider it for whatever it is worth. Anything that throws light on this transaction is competent."

The next witness was Henry Hollen and he gave in substance the same testimony about the same transaction. Defendant also moved to exclude his testimony from the jury, which motion was overruled and the court then admonished the jury as follows:

"Gentlemen of the jury, the evidence of this witness is competent to show the defendant's state of mind toward deceased, and you will consider it so far as it may show a motive for the killing deceased Tom Hollen."

It is earnestly argued for appellant that this evidence was incompetent and highly prejudicial, and many authorities are cited tending to show that evidence of the commission of other offenses is incompetent, especially of misdemeanors.

But this contention overlooks a well known exception to that rule. The Commonwealth in order to show motive for defendant to commit the crime in question may show the fact that defendant has previously been charged with, or has committed a separate and distinct offense, where it has such relation to the charge being investigated as to show a motive for its commission.

Here we have the evidence of decedent's two sons that about a year before the commission of this crime decedent and defendant had some trouble which eventuated in a shooting scrape between them. The details of that trouble or of the shooting then taking place were not gone into; but the court permitted the bare fact that such things had taken place to be put in evidence for the

purpose of showing a motive in defendant for the commission of this crime.

The admissibility of such evidence has been long recognized by this court for the specific purpose indicated. In the case of Martin v. Commonwealth, 93 Ky. 189, the court in considering this precise question said:

"Motive may be shown in certain cases by a state of facts conducing to make out another and distinct offense from that for which the accused is being tried. In passing a counterfeit bill, for the purpose of showing a guilty knowledge, it may be shown that the accused had passed similar bills, knowing them to be counterfeit. When the husband was murdered by the accused, the intimate relation between the wife of the deceased and the accused may be shown as a motive for the commission of the offense. (Stout v. People, 4 Parker's Crim. Rep. 132)."

That opinion on this point was expressly referred to and approved in the later case of Baker v. Commonwealth, 106 Ky. 212.

We attach no importance to the fact that when the first witness (Charles) testified the court failed to admonish the jury as to the precise reason for which the evidence was admitted. The witness (Henry) immediately followed his brother on the stand and gave, in substance, the same testimony about the same transaction, and then the court did properly admonish the jury as to the purpose in admitting the testimony and for what purpose they might consider the same. The latter admonition applied as well to the testimony of Charles as it did to that of Henry under these circumstances.

But it is urged that the court erred grievously when it permitted two witnesses to testify that when appellant and his party on their road home that afternoon stopped at a country store where he tried to buy some cartridges, said he was "going to kill some God damned son-of-bitch before daylight." The objection to this is that it had no reference whatsoever to the decedent and showed no malice or feeling against him.

But there are facts and circumstances which make such a general threat competent, and especially when it may be connected with or explained by other evidence tending to show it had reference to a particular class or person. The evidence, as we have shown, discloses a former difficulty between appellant and decedent and discloses not only that there had been trouble between them but that that trouble had eventuated in a shooting

scrape. These things, taken in connection with the general threat uttered a short time before the killing of decedent, made such threat competent as probably having reference to the decedent.

In this case of Whittaker v. Commonwealth, 13 R. 504, there were general threats not directed specifically at the decedent but uttered on the day of the homicide, as in this case, and the court in holding them competent said:

"The threats were general; no intended victim was named; but the accused, in profane language, declared his purpose to kill a man upon that day. In making these threats he usually exhibited or referred to his knife or pistol."

The court held these general threats competent "as showing general malice and a purpose to injure or kill someone."

In the case of Ford v. The State, 71 Ala. 396, the same question was under consideration, and the court said:

"A threat to kill one man may not be admissible under an indictment charging the defendant with the murder of, or assault with intent to murder, another and different man. Ogletree v. State, 28 Ala. 693. But threats to kill or injure someone not definitely designated, especially when made shortly before the commission of the offense to which they may be construed to have reference, are unquestionably admissible in connection with other explanatory circumstances, and on proof of the *corpus delicti*. . . . It was a matter of mere inference whether the deceased came within their scope. Their weight or probative force was a question entirely for the jury."

In the case of Mathis v. The State, 34 Tex. Crim. Rep. 38, in considering a similar question, the court said:

"It is not necessary to make a threat admissible, that it should be directed against any particular person, when the facts and circumstances tend to point out the person against whom such threat was made. Nor is it necessary to name the threatened party, when the facts and circumstances in evidence give point to the threat, making it clear that the deceased was the party intended."

In this case the general threat was uttered only a short time before the homicide, and at a time when the defendant had his previous animosity against decedent excited and rekindled by over-indulgence in liquor, and

the circumstances were such as to make the general threat competent as probably having reference to the decedent. The appellant appears to have had a fair and impartial trial and we see no error prejudicial to his substantial rights.

Judgment affirmed.