## Waters v. Commonwealth.

(Decided April 28, 1933.)

HENRY WATSON for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The appellant, William Waters, has been convicted under an indictment charging him with murder and his punishment fixed at death. On this appeal the serious responsibility comes to us to determine whether the record discloses such errors, either of fact or of law, as requires the judgment to be reversed and the appellant to be relieved from that sentence to the extreme penalty of the law which now hangs over him.

A number of grounds are relied on for a reversal of the judgment, and each of them has been carefully considered by the court. The indictment under which appellant was tried and convicted charged him with the murder of Stanley Helton, a deputy sheriff of Menifee county. The killing occurred at the home of Charlie Neal in Menifee county on July 13, 1932. Charlie Neal had been killed a few days before, and a warrant had been issued charging appellant with his murder. On the day of this homicide Sheriff J. L. Back, of Menifee county, accompanied by Deputy Sheriffs Allie Henry, Marion Stapleton, W. S. Hogge, John Cox, and the decedent, Stanley Helton, and Roy Williams, a constable, and Menifee Spencer, a neighbor, went to the home of Charlie Neal to arrest appellant on the warrant charging him with the murder of Neal. On reaching the house the officers partially surrounded it, the decedent and Stapleton being located on the south side of the building, Henry, Back, and Cox on the east side, and Williams and Hogge on the north side. Without giving the officers an opportunity to arrest him, appellant began firing at them from the house with a shotgun loaded with buckshot. The officers returned the fire, and appellant ran out of the rear part of the house and

escaped into the hills. Helton was struck by one of the charges of buckshot fired by appellant, and died a few days later in a hospital at Mt. Sterling in Montgomery county. Marion Stapleton also was killed and Roy Williams was seriously wounded.

Appellant had been living in Menifee county about six months before the homicide, and had been staying at the home of Charlie Neal. He had formerly lived in Menifee county, but had been absent from the state of Kentucky for a number of years, more than six of which were spent in the Ohio penitentiary. He admitted that he had killed Neal two or three days before the homicide of which he stands convicted, but he claimed that he did not know a warrant had been issued for his arrest and he did not know the men who had surrounded the Neal house were officers. He claimed that the officers fired first, and, believing they were trying to kill him, and not knowing they were officers, he returned the fire.

Three indictments were returned against appellant in the Menifee circuit court—one for the murder of Stanley Helton, another for the murder of Marion Stapleton, and another for the murder of Charlie Neal. Appellant's motion for a change of venue was sustained, and the cases were transferred to the Montgomery circuit court for trial. The commonwealth elected to try the appellant under the indictment charging him with the murder of Helton.

One of appellant's complaints on this appeal is that in the trial of the case the court did not confine the evidence to the Helton case, but permitted the admission of evidence showing the killing not only of Helton but also of Marion Stapleton and Charlie Neal. On his cross-examination appellant was asked if he killed Charlie Neal, and he answered in the affirmative, and no objection to the question and answer was made, but, even if seasonable objection had been made, this evidence was competent, for it tended to show a motive for appellant's acts on the occasion when Helton was killed. Graham v. Commonwealth, 164 Ky. 317, 175 S. W. 981; O'Brien v. Commonwealth, 115 Ky. 608, 74 S. W. 666, 24 Ky. Law Rep. 2511; Bishop v. Commonwealth, 109 Ky. 558, 60 S. W. 190, 22 Ky. Law Rep. 1161. The court properly admonished the jury that they should not consider this as substantive evidence

against him. Stapleton was shot in the same transaction that resulted in the death of Helton, and it was competent for the commonwealth to show all that occurred on that occasion. The killing of Stapleton, though a distinct crime, was so intimately connected with the crime for which appellant was being tried as to be a part of it and inseparable from it. The killing of Stapleton was mentioned only incidentally by one or two of the witnesses, and the two killings were so closely connected in time and place that separation was practically impossible. Gambrel v. Commonwealth, 241 Ky. 39, 43 S. W. (2d) 335; May v. Commonwealth, 153 Ky. 141, 154 S. W. 1074; Helton v. Commonwealth, 84 S. W. 574, 27 Ky. Law Rep. 137.

The qualification of one of the jurors, Isaac McCarty, is challenged, and it is argued that the trial court erred in overruling appellant's challenge to this juror. He was challenged on the ground that he was not a resident of Montgomery county. McCarty on his voir dire examination stated that he voted in Bath county. He stated emphatically, however, that his land was located in Montgomery county and that he had lived in Montgomery county for a number of years, and that his home was in that county at the time of the trial. The fact that he was permitted to vote in Bath county did not constitute him a citizen of that county.

In his opening statement the commonwealth's attorney made some reference to the killing of Charlie Neal, and it is insisted that the trial court erred in not sustaining appellant's motion to set aside the swearing of the jury. The bill of exceptions fails to set out the statement of which appellant complains. All that appears in the bill of exceptions in reference to the statement of the commonwealth's attorney is the following:

"In said statement he referred to the killing of Charles Neal to which the defendant, through his counsel, objected and the court overruling the objection defendant excepted. After completion of his statement the defendant, through his counsel, moved the court to set aside the swearing of the jury and empanel another jury by reason of the statement of the commonwealth's attorney to the jury referring to the killing of Charles Neal and the court overruled said motion to which the defendant objected and excepted at the time."

There is nothing tending to show that the statement of counsel at the time it was made was prejudicial. As heretofore pointed out, evidence as to the killing of Neal by appellant was competent as tending to show motive for the commission of the crime of which he was accused, and it was not error for the commonwealth's attorney in his opening statement to say that the commonwealth would prove appellant had killed Neal.

Appellant contends the trial court erred in the admission and rejection of evidence, but he does not point out the alleged errors either in his brief or in his bill of exceptions, and we have frequently written that a mere general invitation to search the record in order to ascertain whether any evidence was improperly received or rejected is not sufficient. But, in view of the extreme penalty that has been inflicted in this case, we have carefully examined the record, and find no error in the admission or rejection of evidence that is prejudicial to appellant's substantial rights. In fact, the record is unusually free from such errors, and it is clear that the trial judge conducted the trial with meticulous care.

It is next insisted that the instructions are erroneous. Nine instructions were given covering every phase of the case, and, without copying them in this opinion, it is sufficient to say that they are such as have been approved in numerous cases where similar facts were involved. Appellant complains because no instruction was given on his right to defend the Neal home and its other occupants, who were Mrs. Neal and her two children, but his sole defense was that he shot in his own defense.

After the decedent had been taken to the hospital in Mt. Sterling, he signed the following writing which was admitted as his dying statement:

"I am Stanley Helton. I am in a serious condition and don't believe I can get well. I was shot by Bill Waters today, July 13, 1932."

Appellant insists that the admission of this statement was error, and his principal objection to it seems to be that it is an expression of the opinion of the decedent that he was shot by Bill Waters and not the statement of a fact within his knowledge. This contention is with-

out merit, since the decedent stated positively that he was shot by Bill Waters. One of the purposes for which a dying declaration is admissible is to identify the person who committed the crime. It is not necessary that the decedent should state in his dying declaration the source of his knowledge as to who shot him, but it is sufficient that he state as an ultimate fact the identity of the killer. In any event, the admission of the dying statement was not prejudicial in this case, since there was an abundance of evidence showing that Helton was shot by appellant.

It is finally insisted that the verdict is flagrantly against the evidence, and, in support of this contention, it is argued that there is no proof that appellant fired the shot that killed Helton and that he might have been killed by a shot fired by one of his associates. The evidence shows that, after Waters began firing, the officers shot into the house, and that they were shooting from three directions. Some of the officers were on the opposite side of the house from Helton, and it is suggested that he might have been shot accidentally by one of these officers. The proof shows that Helton was shot with a load of buckshot fired from a shotgun. Appellant fired a shotgun, and he admitted that he used shells loaded with buckshot. While some of the officers had shotguns, none of them had shells loaded with buckshot. The evidence leaves no room for doubt as to who fired the fatal shot.

A careful examination of the record reveals no error that would warrant a reversal of the judgment. The jury heard all the evidence, saw all the witnesses, believed the appellant to be guilty, and fixed his punishment at death. The verdict is amply sustained by the evidence. The appellant had a fair and impartial trial, and the judgment of the trial court must be, and it is, affirmed.

The whole court sitting.