The People of Puerto Rico, Plaintiff and Appellee, *v.* Manuel Hernández, Defendant and Appellant.

No. 5667.  Argued November 7, 1935.—Decided January 21, 1936.

*Cayetano Coll Cuchí* and *Cayetano Coll Cuchí, Jr.*, for appellant.  R. A. Gómez, *Prosecuting Attorney*, for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Manuel Hernández, together with Luis Alfredo Anavitate, was charged by the District Attorney of Ponce with murder in the second degree in that he maliciously caused

an automobile to strike Pablo Guzmán, inflicting upon him several injuries from which he died shortly thereafter.

Hernández entered a plea of not guilty and requested a jury trial. Upon such trial being held, separately, he was found guilty of voluntary manslaughter. He moved to annul the verdict and the motion was denied. On October 3, 1937, the court entered judgment sentencing him to seven years' imprisonment in the penitentiary. Feeling aggrieved by that judgment, he took an appeal to this court.

In his brief he has assigned three errors which, as he claims, were committed by the court in giving the jury an instruction on voluntary manslaughter without the same having been requested; in sentencing him for voluntary manslaughter; and in refusing to set aside the verdict of the jury. The three assignments of error will be considered together.

The evidence for the prosecution showed that on October 29, 1933, the defendant was traveling along the streets of Ponce in a public car which belonged to his father and was driven by Luis Alfredo Anavitate. Near the market place, Bautista Silvagnoli, who was in an intoxicated condition, and accompanied by his two small daughters, hired the car to take him home by way of the Mercedita Central. At first the chauffeur objected, because the passage of public service vehicles through the Central was prohibited, but later he consented in the expectation that an exception would be made since Silvagnoli and the father of Hernández were employees of said Central.

The front seat was occupied by the chauffeur and Hernández, and the back seat by Silvagnoli and his daughters. When they came to the gate at the entrance to the Central, they were stopped by the watchman Pablo Guzmán. An argument then arose, and Silvagnoli stepped out of the car and insistently asked the watchman to let them pass, as he was an employee. The watchman answered that he had to obey orders and said to Silvagnoli: "You sit down here on this

box and wait for the bus, you are drunk." Then the dispute became more violent and Hernández came out of the car, shoved Silvagnoli into it, and said to the chauffeur: "drive the car against that old man (the watchman), who he is not worth $2.50," and the car started, dragging the old man some fifty feet, and continued on its way "at a terrible speed."

The watchman died two hours later. A post-mortem examination, which was performed by doctor Enrique Matta, showed that there had been a fracture of the thigh bone in the hip joint, a broken blood-vessel in the tissues, and several bruises; and the physician concluded that the death was caused by a traumatic shock.

The evidence for the defendant tended to contradict the evidence for the prosecution on two particulars, to wit; that the defendant was not traveling in the front seat but in the back seat; and that it was Silvagnoli and not the defendant who said to the chauffeur: "Go on, hit that old man, he is not worth anything."

The conflict in the evidence was adjusted by the jury against the defendant, and there is no justifiable ground for disturbing its finding. Therefore, the questions raised by the defendant must be considered and decided according to the facts as established by the evidence for the prosecution.

The court, after giving complete instructions to the jury regarding the crime of murder in the second degree with which the defendant was charged, said:

"The court will also instruct the jury on the crime of voluntary manslaughter, because a charge of murder in the second degree includes a charge of voluntary manslaughter.

"If the evidence shows the existence of characteristic elements of the crime of voluntary manslaughter, then the jury, according to the instructions of the court, may bring in a verdict of voluntary manslaughter. Regarding the crime of manslaughter the law says: 'Manslaughter is the unlawful killing of a human being without

malice.' Manslaughter is of two kinds: Voluntary and involuntary. It is voluntary when committed upon a sudden quarrel or heat of passion."

The defendant, who took no exception to the instructions at the time they were given, subsequently set up in a motion to annul the verdict which was presented to the trial court and overruled by it, and now maintains before this Supreme Court, that the district court committed a prejudicial error in giving the jury the instruction above transcribed, as it had not been requested by him, nor was it supported by the evidence. He cites the case of *Johnston* v. *Commonwealth*, 186 S.W. 655, where the following doctrine was laid down:

"In a prosecution for murder, an instruction that the jury may return a verdict of murder or manslaughter is error, where there is no evidence of manslaughter.

"Such error is prejudicial where the verdict is manslaughter."

We might refuse to discuss the error assigned, as no exception was taken to the attacked instruction, but since a fundamental question may be involved, we shall consider it. *Pueblo* v. *Benítez*, 47 P.R.R. 74, and cases cited therein.

The appellant might perhaps be right according to the decision cited by him, if the instruction were not justified by the evidence in the instant case, if the acts done by the defendant could only be considered as murder and not as manslaughter.

But it is not so. In our opinion the evidence sustains the instruction. It is true that the dispute started between Silvagnoli and the watchman and that it became more violent when the watchman remarked upon the intoxicated condition of Silvagnoli, but it is also true that the defendant was directly interested in it from the beginning and that he participated in it. He was the son of the owner of the public vehicle hired by Silvagnoli to take him home, and he was traveling with the chauffeur in the pursuit of his business. He accepted to make the trip with full knowledge of the

obstacle that might be encountered as it was in fact encountered, and with the purpose of finishing the trip, and, naturally, of collecting the corresponding fare. The attitude of the watchman affected him directly. It was the watchman who came to face him, who objected to the carrying out of his purpose, who did not yield either to entreaties or arguments, who could only be overcome by force.

The conduct of the watchman could not have aroused the anger of a normal person, but it could have aroused that of a person capable of doing the acts committed by the defendant.

The action of the defendant could only spring from an abandoned and malignant heart or from one—with criminal instincts of course—in a heat of passion. Hence, both the charge of murder in the second degree and that of manslaughter were justified, and the court acted in accordance with the facts and the law in giving the instruction.

As there was no error in the instruction given, it must necessarily be concluded that there was none, either, in the verdict and judgment which followed said instruction.

For the reasons stated, the errors assigned being nonexistent, the appeal must be dismissed and the judgment appealed from affirmed.