## Canada v. Commonwealth.

Feb. 6, 1940.

T. E. Mahan, W. B. Early, L. O. Siler and J. C. Bird for appellant.

Hubert Meredith, Attorney General, and W. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

Albert Canada appeals from a judgment sentencing him to life imprisonment for the murder of George Hamblin. He was indicted with four others but tried separately. The evidence establishing guilt was circumstantial. The defense was a denial and alibi, together with an explanation of incriminating facts.

The instructions submitted only the questions of the defendant's guilt of murder, committed by him directly or as aider and abettor of the others, or pursuant to conspiracy in which he had joined.

Hamblin was living alone near Cumberland Falls. He had gone home about half-past ten one night in June, 1938, after a fox hunt. Neighbors had heard firing in that direction between 11 and 12 o'clock. The next morning a friend went to his house and saw that a window had been shot out and bullet and gunshot holes all around it. Peering inside he saw Hamblin on a bed covered with blood. Upon calling he received a mumbled answer and undertook to go inside, but found the front door locked. He went for assistance and soon a party of ten or twelve men came. They found the side door open. The man and the bedding and walls of the room were peppered with shot and very bloody. Hamblin was taken to a hospital, where he died several days

later without having been conscious. His arm was so badly shattered that it was amputated in an effort to save his life. The most serious wound, and that which caused his death, was a shot in and through the eye entering his brain.

Three sets of foot-prints led from the place, but it was not proven that any were like those made by shoes worn by the appellant. They did correspond with those made by his co-defendants. Blood hounds first trailed to the defendant's home. From there they followed a path some distance in the hills where they came upon the defendant and the other men. The dogs laid down by Everett Canada, the appellant's son, thereby indicating that the trail was ended. The son lived with his father. Two shotguns at his house had been recently fired. Hulls picked up at Hamblin's cabin fit those guns, and shells of the same size and brand were also found there. At least one threat had been recently made by the accused that Hamblin should be got rid of. As hereinafter disclosed, there was abundant evidence of motive.

The appellant argues that the case comes within the rule that where there is no eyewitness to a homicide and the evidence is strictly circumstantial, especially where the surrounding conditions indicate there was a struggle at the time of its commission, the court should instruct upon every phase or degree of the offense that might possibly be applicable in order that the jury may return a verdict under any state of fact which might be inferred from the circumstances to have existed. Fletcher v. Commonwealth, 239 Ky. 506, 39 S. W. (2d) 972.

Appellant relies upon Sergent v. Commonwealth, 202 Ky. 228, 259 S. W. 349. In that case a man's body, with a large hole in the back of his head, was found on the mountain side and there were foot-prints in and around it, though no visible sign of a struggle having taken place at the spot. The court had not given a manslaughter or self-defense instruction, and we held that they should have been given, although there was a more serious error committed by admitting incompetent evidence which required a reversal of the judgment. That was an extreme application of the rule although there is a distinction in the facts from the case at bar. It was conceivable that men being together in the mountains, as evidenced by the number of foot-prints, may

have had a fight. In this case all of the circumstances and conditions indicate that the victim was assassinated through the window as he lay on his bed. There was no sign of any struggle or fight or resistance, or any other condition upon which the jury could have based an inference of mitigation of the crime of murder.

It is not required that the court give a routine of instructions regardless of their applicability to the facts of the case. The influence or demand of this fundamental rule respecting the giving of instructions based only upon the evidence has, in effect, modified the general statement that there should be a complete coverage by giving instructions on every possible theory of homicide when the evidence upon which the commonwealth relies for a conviction is altogether circumstantial, with no eye witness testifying. Notwithstanding the repetition of the statement, throughout the entire line of opinions each decision as to the propriety of giving all the instructions has rested upon the fact that there was something in the conditions or circumstances to show the possibility of a basis for a manslaughter or self-defense instruction. There is nothing in this record that could form the predicate of an inference that the man was killed in sudden heat and passion or in sudden affray. There are many rulings which justified the court in confining the instructions to murder. Among them may be cited, as of close application, O'Brien v. Commonwealth, 89 Ky. 354, 363, 12 S. W. 471, 11 Ky. Law Rep. 534; Bast v. Commonwealth, 124 Ky. 747, 99 S. W. 978, 979, 30 Ky. Law Rep. 967, and cases therein cited; Wilson v. Commonwealth, 166 Ky. 301, 179 S. W. 237; Crenshaw v. Commonwealth, 227 Ky. 223, 12 S. W. (2d) 336.

The Commonwealth proved that shortly before Hamblin was killed the defendant, Canada, had reported to a Federal officer the location of Hamblin's moonshine still, and introduced evidence tending to show a present bad feeling between the parties growing out of illegal liquor operations. It was developed by the Commonwealth in establishing a motive that in 1927 the decedent, Hamblin, the defendant, Canada (who was then Hamblin's father-in-law), and four other men were indicted for the murder of J. M. Bolton, and that in that prosecution, in which Hamblin was tried and Canada not tried, they "were on opposite sides of the case," as

were some of the other parties indicted with them. Testimony was also introduced that about five years before this trial the defendant and other men were charged with the killing of Press Perkins, and that "in that trouble" the deceased and the defendant and some of his co-defendants were "on opposite sides." It was shown that Hamblin had testified in that case against Jim Canada and Ancil Richmond, the defendant's son-in-law; and further that both the Bolton and Perkins killing "grew out of moonshine trouble among those people." On cross-examination the defendant was asked and testified that after the first trial of the Bolton case Hamblin had "gone back" and indicted him and Ancil Richmond and others, and that Richmond was tried. Two of those cases reached this court. Richmond v. Commonwealth, 255 Ky. 758, 75 S. W. (2d) 500; Canada v. Commonwealth, 262 Ky. 177, 89 S. W. (2d) 880.

The appellant submits that the admission of this evidence, to which objections were made, violated the fundamental law that a man shall be tried for one offense at a time and that it was incompetent because it tended to show or did show that the accused had committed another crime, wholly independent of that for which he was being tried. See Frasure v. Commonwealth, 245 Ky. 127, 53 S. W. (2d) 204. The existence of motive is indicative of the probability of guilt as the absence of motive is indicative of innocence, so that any relevant fact is admissible which tends to prove a motive on the part of the accused for committing the crime with which he is charged; and where the evidence of guilt is circumstantial, such proof is of great importance and may be decisive. Bates v. Commonwealth, 189 Ky. 727, 225 S. W. 1085. In order that this important element or factor may be established, there is an exception to the rule against admitting evidence of other offenses. Where such offenses have relation to the charge being tried, evidence concerning them is admissible if it tends to show motive for its commission. Burns v. Commonwealth, 198 Ky. 319, 248 S. W. 848. But the evidence complained of here did not show the accused committed any other offense. Its sum and substance is that on two previous occasions the decedent and the defendant had been jointly indicted on the charge of homicide; that the deceased had been convicted of one of those crimes but that the defendant was not convicted of either, and in

one case not even tried. It was shown those involvements had engendered bad feelings between the men and those killings had grown out of the same thing that the Commonwealth contended caused the accused to kill Hamblin.

Roberson's New Kentucky Criminal Law and Procedure, Sec. 511, thus states the rule in this connection:

"Evidence of antecedent menaces, threats, grudges, or previous quarrels or difficulties between the accused and the deceased and the cause for same are admissible on the question of motive; but the particulars thereof are not admissible. Personal or bad feeling between the parties or feeling of hatred and revenge by the defendant toward the deceased and the cause thereof may always be shown."

The precedents in which this rule of competency was applied may be noted. We have held competent as showing motive for the killing evidence that the decedent had procured an indictment against the accused charging him with assault, Ball v. Commonwealth, 125 Ky. 601, 101 S. W. 956, 31 Ky. Law Rep. 188; that at the time the defendant killed deceased he was under indictment for shooting and wounding him in the early part of the year, McElwain v. Commonwealth, 146 Ky. 104, 142 S. W. 234; that defendant was running a still near decedent's home and that they had fallen out over the defendant's refusal to remove same, Fleming v. Commonwealth, 224 Ky. 160, 5 S. W. (2d) 899; that deceased had reported a moonshine still and connected certain of the defendants with it, Crenshaw v. Commonwealth, supra; and that defendant had killed another man when he killed an officer attempting to arrest him on that account, Waters v. Commonwealth, 250 Ky. 302, 62 S. W. (2d) 1027.

The argument is made that the evidence, particularly as to the Bolton difficulty, was too remote to be admissible. Standing by itself it might be regarded as so remote that it threw no relevant light on the subsequent relations of the parties, but taken in connection with other evidence it tended to establish a continuing state of bad feelings between the parties for many years. Its remoteness went rather to its weight than to its competency. Childers v. Commonwealth, 161 Ky. 440, 171 S. W. 149.

We think the evidence was confined to establishing motive and grounds for ill-feeling, and therefore was properly admitted.

Officers testified to having arrested Everett Canada, the defendant's son, who was also charged with this murder, and that after getting some information from him they went back to Hamblin's home. Also that they later arrested two other co-defendants, Meadors and Earls. From information given by Meadors they got his pistol at the home of his mother-in-law. It is submitted that this evidence violated the rule against admitting statements and acts of co-conspirators after the commission of the crime. No effort was attempted to prove what these parties had said. The evidence was neither material nor relevant, but it is difficult to see how it prejudiced the rights of the defendant on trial. We hold it to have been harmless.

The defendant was questioned after his arrest by the officer. Some statements he made then were proved to contradict certain testimony he gave on the trial, and it is contended that the court erred in not giving an instruction to the effect that if the jury believed the statements were obtained in violation of the anti-sweating statute (Kentucky Statutes, Section 1649b-1 et seq.), they should not regard them. The subject matter was not very material and by no means can the statements be classed as a confession of guilt or of incrimination. They were proper for introduction for the purpose of affecting the credibility of the defendant as a witness. Therefore, it was not error to omit the instruction contended for.

The evidence, in our opinion, was not sufficient to authorize the submission of the case upon the theory that the defendant was present when the crime was committed. Its sufficiency on the theory of defendant's participation in a conspiracy is not wholly free from doubt, but since the judgment must be reversed for errors in the instructions, we refrain from deciding whether or not the evidence was sufficient to sustain the verdict.

Conspiracy may be and is often necessarily proved by circumstances. Though each incident taken by itself would not be sufficient, if all of them considered as a whole afford a reasonable inference of the existence of a conspiracy—as contra-distinguished from merely raising

suspicion—there is a question for the jury. Owens v. Commonwealth, 181 Ky. 378, 205 S. W. 398; Middleton v. Commonwealth, 204 Ky. 460, 264 S. W. 1041; Skillian v. Commonwealth, 206 Ky. 586, 268 S. W. 299

The evidence of the whereabouts, acts and utterances of the appellant's co-defendants were admitted, of course, on the theory of murder committed pursuant to a conspiracy in which the accused was a participant. It is essential to the competency of such evidence that the existence of a conspiracy in which the actor or spokesman and the defendant on trial were parties should be prima facie shown. Fletcher v. Commonwealth, supra; Davis v. Commonwealth, 256 Ky. 423, 76 S. W. (2d) 259. Sometimes it is sufficient to give an oral admonition as to the consideration or rejection of such evidence depending upon this predicate, but where the case is a close one and the question of guilt or innocence of the accused is in a large measure dependent upon such testimony, the court should give an instruction as to what circumstances the jury may consider the acts and statements of the alleged co-conspirators made out of the defendant's presence and hearing. The form of a proper instruction is outlined in Skillian v. Commonwealth, supra. But when there is evidence of the defendant's guilt upon any theory other than a conspiracy consummated by his alleged co-conspirators in defendant's absence, or when there is evidence of the defendant's participation in such conspiracy other than that afforded by the acts and utterances of the alleged co-conspirators, then the clause authorizing a verdict of not guilty, as contained in the Skillian opinion, should be omitted. The instruction in such a state of case may be in the form given in the opinion of the companion case of Meadors v. Commonwealth, 281 Ky. 622, 136 S. W. (2d) 1066, decided today.

Complaint is made of certain argument of the attorneys for the Commonwealth, to which objections were made and overruled. The statement that the defendant had been in court fifteen or sixteen years without being tried because he had "always been able to hide behind the curtains or by putting others in front" was improper and should not have been made.

The judgment is reversed.

Whole Court sitting.