Jack H. GRISSOM, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 11, 1971.

Robert T. Schneider, Horse Cave, for appellant.

John B. Breckinridge, Atty. Gen., Curtis L. Wilson, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

On October 20, 1969, Sylvia Grissom was found in her bedroom with a fatal pis-

tol wound in her head. Her husband, Jack Grissom, was charged with murdering her. Upon his trial he was found guilty of voluntary manslaughter and sentenced to imprisonment for twenty-one years. On this appeal he contends that (1) the court erred in giving a voluntary manslaughter instruction, since the proof required a finding of willful murder or acquittal; or, in the alternative, the court should have instructed on involuntary manslaughter if it was proper to instruct on voluntary manslaughter; (2) photographs of the victim's body should have been excluded; (3) the court erred in denying a motion for change of venue; and (4) the court improperly refused to "admonish and discharge a juror for cause."

In discussing so much of the factual background as is necessary for an understanding and disposition of the questions, the given names of the victim and accused will be used.

Jack and Sylvia were married in 1966, each having been married before. Their married life was marked with much strife, which included Jack's beating and cutting Sylvia with a bottle and Sylvia's shooting and wounding Jack with a pistol. Some evidence was presented which tended to show that the couple had serious quarrels about a number of matters, including Jack's alleged involvement with other women. On the day before Sylvia's death, she had driven to a neighbor's home in Jack's car. He considered it necessary to surreptitiously take the car away from her because of her mental and physical condition (which was said to have included intoxication or drug use, or both). From all these circumstances, it was reasonable for the jury to believe that Sylvia and Jack may well have had a heated argument on the fatal day.

Jack and Sylvia were the only two persons in the house when Sylvia received the fatal wound. Jack's version of the matter was that he came into the house, but did not see Sylvia until after she was shot.

He offered evidence tending to prove that the time lapse between the time a shot was heard and Jack was seen made it physically impossible for him to have fired the shot which killed Sylvia. If the jury had believed that account, it should had acquitted Jack. However, Jack does not contend that he was entitled to a peremptory instruction of acquittal. Rather, it is his theory that in all the circumstances the jury had to believe that he killed Sylvia with malice aforethought or not at all. It was murder or nothing, says Jack.

It is appropriate to observe that Jack's claim of complete innocence and ignorance of Sylvia's wounding leaves only the theory that Sylvia shot herself. Two physical facts militate strongly against that hypothesis; there was no powder burn on Sylvia's body; no weapon was found. Since Sylvia was shot in the right temple with a .38 caliber bullet which emerged from her left temple, it is at least mysterious how she could have accomplished this herself without leaving powder burns or the weapon.

In support of his view that no instruction on voluntary manslaughter should have been given, Jack cites Shannon v. Commonwealth, Ky., 460 S.W.2d 346; Davenport v. Commonwealth, 285 Ky. 628, 148 S.W.2d 1054; Canada v. Commonwealth, 281 Ky. 641, 136 S.W.2d 1061; and Johnston v. Commonwealth, 170 Ky. 766, 186 S.W. 655.

The Commonwealth contends that the court properly gave the voluntary manslaughter instruction and cites Marcum v. Commonwealth, 305 Ky. 92, 202 S.W.2d 1012; Cottrell v. Commonwealth, 271 Ky. 52, 111 S.W.2d 445; and Fitch v. Commonwealth, 267 Ky. 646, 103 S.W.2d 98. All of the cases just mentioned recognize that the instructions in a criminal case should contain the whole law of the case. Those decisions, and many others which could be cited, recognize that the propriety of giving any particular instruction in a criminal case rests upon the determination

that something in the contentions or circumstances reflects a legal basis for the particular instruction.

In Canada v. Commonwealth, 281 Ky. 641, 136 S.W.2d 1061, the court instructed on murder only. The defendant contended that he was entitled to an instruction on voluntary manslaughter. This court rejected that contention because it found that there was nothing in the record that could form the predicate of an inference that the victim had been killed in sudden heat or passion or in sudden affray. In support of that conclusion the court noted that all of the circumstances and conditions indicated that the victim had been assassinated in the nighttime by shots through a window as he lay on his bed. The court said in part: "There was no sign of any struggle or fight or resistance, or any other condition upon which the jury could have based an inference of mitigation of the crime of murder." Id. 136 S.W.2d 1063. In the present case there was abundant testimony, including that heard from the lips of the appellant himself, that almost continuous strife and argument prevailed between Sylvia and Jack. While there was no direct evidence of struggle in the sense that a disarray of furniture or other objects could be seen, the constant bickering and physical encounters which had occurred between the victim and the accused afford basis for an inference that a homicide occurred in circumstances short of willful murder.

In Davenport v. Commonwealth, 285 Ky. 628, 148 S.W.2d 1054, the court instructed only on murder and reasonable doubt, omitting instructions on manslaughter and self-defense. There it was argued that since there was no eyewitness to the killing and as there was evidence of a struggle, the court should have instructed on every degree of the crime which might possibly apply so that the jury might return a verdict consistent with any state of facts which it might believe existed from the evidence. The court rejected the argument in that case, pointing out that the defendant's own testimony foreclosed his right to insist on the instructions covering manslaughter and self-defense. It was stated in Davenport, in analyzing Frasure v. Commonwealth, 169 Ky. 620, 185 S.W. 146:

"* * * where the evidence is entirely circumstantial and only establishes the corpus delicti, and other circumstances from which defendant's connection with the crime might be inferred, the court should instruct on all phases of homicide; but where defendant testifies to facts showing how the killing occurred and where there is no room for any possible theory except he is guilty of murder or he is innocent, there is no reason for the court to give the manslaughter and self-defense instructions." Id. 148 S.W.2d at 1060.

In the present case the defendant did testify but did not testify to facts showing how the killing occurred. It may not be said here that there is no room for any possible theory except murder or innocence.

In Shannon v. Commonwealth, Ky., 460 S.W.2d 346, it was held that a conviction of voluntary manslaughter could not stand, because there was no evidence supporting a theory of voluntary manslaughter. In Shannon the victim was dancing when she was shot in the head and killed. There was no showing of motive, nor even a positive showing as to who fired the shot. The record was devoid of any circumstance warranting the instruction on voluntary manslaughter. Those circumstances do not prevail in the present case.

Johnston v. Commonwealth, 170 Ky. 766, 186 S.W. 655, also recognizes the general principles already referred to. In Johnston the giving of a voluntary manslaughter instruction was held to be error because the circumstances of the homicide foreclosed the possibility of voluntary manslaughter. Such is not true in the present case. It was proper to instruct on voluntary manslaughter.

■ Jack presents the alternative argument that if it was proper for the court to instruct on voluntary manslaughter, then it was necessary that the court include an instruction on involuntary manslaughter. While it is doubtful that the circumstances of this case required any instruction on involuntary manslaughter, no claim of error *in this respect was preserved for appellate* review. No motion for new trial was filed. At no point in the proceeding was the trial judge requested to rule on the question of giving an instruction on involuntary manslaughter. No claimed error is presented for review. RCr 9.54(2).

■ Objection was made to the introduction of photographs depicting the body of the victim. Before the pictures were offered, the appellant stipulated that a gunshot wound in the head had caused the death of the victim. The photographs are not pleasant, but they are not sordidly gruesome either. They affirm the absence of powder burns. A substantial bruise upon the body is shown in one of the pictures and would support a theory of struggle between Sylvia and Jack. Upon the authority of Parker v. Commonwealth, Ky., 461 S.W.2d 86; Jaggers v. Commonwealth, Ky., 439 S.W.2d 580; Napier v. Commonwealth, Ky., 426 S.W.2d 121; and the cases therein cited and discussed, the court finds no merit in the contention that the admission of the photographs was prejudicial or erroneous.

■ The appellant made timely motion for change of venue, asserting that the state of public opinion in the community was so inflamed against him that he could not obtain a fair trial in Metcalfe County. The court conducted a hearing on *that question and resolved the issue against* the appellant. An unusual circumstance was presented at that hearing when appellant's counsel took the stand and testified that he had interviewed at least "fifty to seventy-five people" who indicated to him that they felt the appellant could not obtain a fair trial because of sentiment against

him, but who also were so apprehensive of public opprobrium that they were unwilling to come forward and give evidence. In this connection, after the first hearing on the change of venue and before the trial, an article appeared in the Edmonton Herald-News reporting the denial of the motion for change of venue. The same article recounted that a court of inquiry had been held looking into certain rumors which had become circulated in the community. The same article pointed out that the basis of those rumors had been exploded and observed that the court of inquiry was satisfied that the rumors were of a fanciful sort. A review of the proceedings, including the hearings for change of venue and the voir dire examination of prospective jurors, leads to the conclusion that the trial court did not abuse its discretion in denying the motion for change of venue. Some of the previous decisions touching this point are cited by the Commonwealth and include Bircham v. Commonwealth, Ky., 238 S.W.2d 1008; Claypoole v. Commonwealth, Ky., 355 S.W.2d 652; and Yager v. Commonwealth, Ky., 436 S.W.2d 527. In Tarrence v. Commonwealth, Ky., 265 S.W.2d 40, it is said in part:

"Denial of the motion (for change of venue) will not authorize a reversal of a judgment of conviction where it appears from the record as a whole that a fair *and impartial trial was given the defend-* ant by the jury chosen." Id. 265 S.W.2d at page 46.

The trial court correctly concluded that the testimony of Jack's counsel was not competent. A review of the entire record of this trial convinces the court that a fair trial was afforded the appellant by the jury *which was chosen.*

■ During the voir dire examination, one of the veniremen answered that he had expressed an opinion about the case. When the trial judge inquired of him about it, the venireman responded: "Well, I could be changed if they prove someone

else done it." After some further colloquy between the trial judge and the prospective juror, the venireman again said "Well, if they can prove someone else done it, I would be willing * * *." At that point counsel for appellant moved the court to admonish the jury not to consider the statement and asked that the venireman be excused for cause. The prospective juror stated: "I would try to go by the evidence." The court deferred a ruling on the motion to strike the juror for cause, but later struck him for cause. The motion for admonition to the remaining jurors was not renewed. It is apparent from the tenor of the trial, as gleaned from the record, that all members of the jury were repeatedly impressed with the necessity of affording appellant a fair trial based only upon the evidence presented in court and the law as given by the trial judge. In all the circumstances of this record, the court is unable to say that any prejudice occurred by reason of this incident. Cf. Penman v. Commonwealth, 141 Ky. 660, 133 S.W. 540; Francis v. Commonwealth, Ky., 468 S.W.2d 287, decided May 28, 1971.

The judgment is affirmed.

All concur.